## W. F. MYERS v. STATE.

No. A-3624.   Opinion Filed June 6, 1921.
(197 Pac. 884.)

(Syllabus.)

1. **Rape—Essentials of Offense by Husband—Instruction.** Where a husband is charged with rape committed on his wife, an instruction to the jury defining rape, given in the language of the statute, section 2414, Rev. Laws 1910, except that it omits the phrase "not the wife of the perpetrator," is erroneous in that it omits one of the elements of the offense named in the statute.

2. **Same—Necessity of Collusion Between Husband and Perpetrator.** Part of subdivision 8 of the statute defining rape provides: "That in all cases of collusion between the accused and the husband of the female to accomplish such act, both the husband and the accused shall be deemed guilty of rape." Held

that where it appears that there is no collusion and no common felonious purpose between the husband and the actual perpetrator to commit the act, the husband alone cannot be guilty of raping his wife.

3. **Same—Requisites of "Collusion."** Where the perpetrator of the offense believed that he was having sexual intercourse with a common prostitute, the fact that the female was coerced by her husband to submit to such act will not of itself, without a common felonious intent, constitute collusion between the accused husband and the actual perpetrator.

4. **Same—Conviction of Husband—Insufficiency of Evidence.** The evidence as a whole, as recited in the opinion, was insufficient to support the verdict.

Appeal from District Court, Bryan County; J. M. Crook, Judge.

W. F. Myers was convicted of rape and sentenced to serve a term of fifteen years in the state penitentiary, and he appeals. Reversed.

Robert Crockett and W. B. Stone, for plaintiff in error.

S. P. Freeling, Atty. Gen., and W. C. Hall, Asst. Atty. Gen., for the State.

BESSEY, J.   On the 15th day of March, 1919, in the district court of Bryan county W. F. Myers was convicted of rape upon the person of Goldie Myers, committed on May 15, 1918, and his punishment was fixed at imprisonment in the state penitentiary for a term of fifteen years. From this judgment and sentence he appeals.

The evidence disclosed that W. F. Myers, plaintiff in error, herein called the defendant, was a moral degenerate who by force or persuasion, induced his wife, Goldie Myers, to lead the life of a prostitute. The information charged that the defendant, by means of a certain dangerous and deadly weapon, a knife which he held in his hand, forcibly compelled Goldie Myers, his wife, against her will to submit to sexual intercourse with one Arn Adcock, and that she was prevented

from offering resistance to the act of sexual intercourse by reason of the defendant's threats to kill her and threats of immediate great bodily harm, which the defendant then had the apparent power to execute.

The testimony of Goldie Myers discloses that she was married to the defendant in December, 1917, when she was just past seventeen years of age. That she then resided in the country, four miles west of Durant. That the defendant was a man of uncertain habits and occupation. That in May, 1918, there was a show at the town of Mead, in Bryan county, giving nightly performances, and that defendant and his wife went to Mead and took lodgings in a hotel there, where they remained all night. The following night, at their room at the hotel, the defendant told witness that he was going to arrange with men to have sexual intercourse with her, and told her to charge and collect for it. She objected, and that he told her that if she didn't have sexual intercourse with men he would cut her "damned head off," and that while this threat was being made he held an open knife at her throat. That later, after dark, they went walking up the railroad track, and after they had gone some distance defendant told her there would be some men come, and instructed witness to have intercourse with them. That she protested and he told her she had to do it, while he held the open knife in his hand. Presently three men or boys came, and defendant told witness to go ahead and get the money. He told witness to stay where she was and he retired a short distance away, leaving this man, Arn Adcock, with whom she had sexual intercourse, collecting the money and turning it over to defendant. Then the other two boys came in turn to where witness was and had sexual intercouse with her.

After that they walked back to the show, where the defendant made arrangements with three more men, and they all got into a car and went into the country, and witness there

had sexual intercourse with two of them and attempted intercourse with the third. That when alone with the defendant she protested and he repeated his threats to do her great bodily harm if she failed to carry out his instructions. That no protests were made in the presence of these men, and from all that appears from her testimony these men did not know that she was acting against her will. That the defendant was not in the immediate presence of the parties when these sexual acts were performed, but remained in speaking distance, some fifty or sixty feet away.

On cross-examination the witness, Goldie Myers, said she first had sexual intercourse with other men at Leigh, about three months after her marriage to defendant. Later she had intercourse with men at her room in a hotel at Mead, at Coalgate, at Madill, Poteau, Bonham, Texas, and Dennison, Texas. In each case she claimed that the intercourse was arranged for by her husband, the defendant, and was done under fear and duress. She did not disclose these threats and duress to any of the men with whom she had intercourse, and did not communicate them to her parents or to any friend or any other person, because she feared that if she did the defendant would put his threats into execution. That she visited Durant on two or more occasions in the absence of her husband, after the last visit at Mead, but made no effort to communicate to her father the threats or conduct of her husband.

Arn Adcock testified for the state, to the effect that before the time of this offense he was not acquainted with Goldie Myers or her husband; that he saw both of them at Mead while the show was going on there, but had not spoken to either one. After receiving information from others as to where Goldie and the defendant were, along the railroad track, witness and Joe Jackman went to where they were. The defendant was sitting on a dump, about fifty or sixty feet from where Goldie sat; witness came to him first and defend-

ant said she was right up the track. If defendant had anything in his hand there witness didn't see it. Witness had a lighted cigar in his mouth, and defendant told him to get rid of it—that the law might see it and come down and get them. Witness went to where the woman was and she asked him what he wanted and on being told, they proceeded to have intercourse without further conversation. She asked for the money and was paid, and witness was warned to hurry away or the defendant would "raise the devil." "The woman did not appear to be excited. She acted like she didn't care whether she done it or not." Witness then went back to where defendant was standing with Joe Jackman and waited until the latter went to the woman and had intercourse. In the meantime there was no further conversation with the defendant. When Jackman returned the two went back to town, leaving the defendant and the woman in the position they were when first seen there.

The testimony of Adcock is typical of the testimony of four other state witnesses, who testified that they had intercourse with this woman that night. None of them knew that she was laboring under fear, duress or threats, all supposed that she was a common prostitute willingly selling her person for gain.

We feel, as doubtless the jury felt, that this degenerate husband deserved severe punishment, but that alone is not the question before us. It is for us to determine, as a matter of law, whether the facts proven constitute rape, or some other crime. Section 2414, Rev. Laws 1910, provides:

"Rape is an act of sexual intercourse accomplished with a female, not the wife of the perpetrator, under either of the following circumstances:

"First. Where the female is under the age of sixteen years.

"Second. Where the female is over the age of sixteen years and under the age of eighteen, and of previous chaste and virtuous character.

"Third. Where she is incapable, through lunacy or any other unsoundness of mind, whether temporary or permanent, of giving legal consent.

"Fourth. Where she resists, but her resistance is overcome by force and violence.

"Fifth. Where she is prevented from resistance by threats of immediate and great bodily harm, accompanied by apparent power of execution.

"Sixth. Where she is prevented from resisting by an intoxicating narcotic or anesthetic agent, administered by or with the privity of the accused.

"Seventh. Where she is at the time unconscious of the nature of the act and this is known to the accused.

"Eighth. Where she submits under the belief that the person committing the act is her husband, and this belief is induced by artifice, pretense or concealment practised by the accused, or by the accused in collusion with her husband with intent to induce such belief. And in all cases of collusion between the accused and the husband of the female, to accomplish such act, both the husband and the accused shall be deemed guilty of rape."

Unlike the statutes of many other states that adhere to the common law definition of rape, our statute provides that in eight different conditions or situations sexual intercourse with a female shall constitute rape, and all other situations must be excluded. It would seem, then, under our statute, under circumstances shown by the testimony in this case, that the crime of rape can be committed only on some female "not the wife of the perpetrator," except as provided in subdivision eight, above quoted, the husband may be guilty of the offense perpetrated on the wife in any of the ways pointed out in the statute by collusion with the party actually committing the

act, or by aiding or abetting the principal perpetrator to commit the act, and not otherwise.

The word "perpetrator," as defined in Webster's International Dictionary, is "one who commits an offense or crime; one who is guilty of an act, usually in a bad sense." In this case it is conceded that there was no collusion or conspiracy between the husband and any of the young men who had intercourse with the wife to have such intercourse forcibly or against her will. These men were not guilty of the charge of rape, and that being so, in the absence of collusion the husband must have been the sole "perpetrator," without collusion of any other person; and our statutory definition of rape takes out of its operation the offense committed by the husband alone against the wife, although done through the instrumentality of an innocent third person. By the exception to the above rule, as embodied in subdivision eight, where the act is done by the husband in collusion with some other person who commits rape upon his wife, both the husband and his coconspirators are guilty, but the husband alone, in this case the sole "perpetrator," cannot commit rape on his own wife.

The reports abound with decisions holding that where the husband conspires with a third person to commit a rape on his wife both are guilty of the offense, but after diligent search we have been able to find but two cases where the third person, the one who actually committed the act of sexual intercourse, was not a coconspirator with the husband to ravish the woman. In the case of State v. Dowell (N. C.) 8 L. R. A. 297, the husband, a white man, at the point of a gun compelled an unwilling negro to attempt to have sexual intercourse with his wife. We assume that the want of precedents covering situararely drags them to such depths as to cause them to attempt an offense so difficult, repulsive and abhorrent. In the Dowell Case, supra, there was no statute defining rape as in this

state. The court held in that case that there was a sufficient criminal intent on the part of the negro to sustain a conviction of the husband of an assault to commit rape upon his wife, where by threats of death he coerced this third person to attempt to ravish her; that nothwithstanding such threats it was the duty of the third person to refuse and resist. But there was a dissenting opinion, embodying, as we think, the better reasoning, in which it was said:

"In the nature of the marriage relation the husband himself cannot ravish his wife; nor, for like reasons, can he in a legal sense, assault her with the intent to commit rape upon her. He can only commit the offense of rape, or that of assault with intent to commit rape, against his wife, by procuring, aiding, abetting or encouraging another to commit these offenses. His offense, in such case, depends necessarily upon the perpetration of the principal offense by another party. In this case the negro named did not commit a rape upon the wife of the defendant, nor did he assault her with such intent. There was a total absence of such intent upon his part. Then, in the nature of the matter, how can the defendant be charged with the particular offense charged against him in the indictment? As the negro committed no assault with intent to rape, so the defendant did not. It is said Shall the defendant go quit? Has he committed no offense? Most unquestionably he shall not go quit. He has committed an offense, a very serious one. He is chargeable with assault upon his wife with a deadly weapon, and with intent to kill, and a like assault upon the negro."

The reasoning of this dissenting opinion is in some measure amplified in the case of State v. Haines (La.) 44 L. R. A. 837:

"While the husband is indicted as a principal, he could be guilty of the crime of rape, in so far as his wife is concerned, only on the supposition and proof that he procured the offense to be committed by another, or aided or abetted the other in so doing; for, if he were the one who, forcibly and against her consent, performed the sexual act upon her, there was and could be no rape."

"One cannot be guilty of aiding and abetting the perpetrator of a crime without its first being shown that the crime has actually been committed by another."

A case having some point of analogy to the case here at issue is the cas oef State v. Jackson, 65 N. J. Law, 105, where it appeared that a Mrs. Jackson had acted as a procuress for one Kinsinger in persuading a girl to go to a room provided by this woman, where Kinsinger expected to meet and debauch the girl. That after meeting Kinsinger in the room appointed the girl resisted and refused to yield to his wishes. Kinsinger and the Jackson woman were jointly indicted for a felonious assault on the girl. Held, that the accusation would not hold against the Jackson woman. She was not present, aiding and abetting the assault, and did not know that Kinsinger would attempt to gratify his passion against the will of the girl, or make an assault upon her person. This Jackson woman simply arranged for a meeting place for these two by mutual consent, and while she might have been indicted as a panderer or for keeping a place for assignation, she was not, under the circumstances, guilty of an assault to rape. Like Arn Adcock in this case, she was not entirely guiltless, but certainly neither was guilty of the offense of rape. Applying the rule announced and following the Dowell Case, supra, the unlawful purpose of this Jackson woman in the one case, and of Arndale in the instant case, to commit a misdemeanor would be sufficient to predicate a felony charge against the chief perpetrator of the respective offenses. With this conclusion we cannot agree; we think that if the woman and Arn Adcock were innocent of the crime of rape it was immaterial that they were guilty of misdemeanors, and being guilty of a misdemeanor would not make either of them responsible for the overt act of rape committed by another, without their knowledge and consent, and that such participation, without felonious intent, would not make the actual perpetrator a coconspirator, because there was no common purpose to commit a felony.

The statutes of neither North Carolina nor Louisiana classify and define rape, as in this state. The statutes of New Jersey, without mentioning the husband, make every person who aids, abets, counsels or procures the commission of the offense equally guilty with the principal offender. In this state every condition not included in the statutory classification is by implication excluded, and we hold that the general declaration in our statute that rape is an act of sexual intercourse accomplished with a female, not the wife of the perpetrator, excludes every such act not within the purview of the eight subdivisions of that statute.

It is a general rule of statutory construction that the mention of one thing implies the exclusion of another thing; that where an offense is defined and its application to enumerated conditions prescribed, it is implied that it shall not apply to other conditions not enumerated. Sutherland on Statutory Construction, secs. 326 and 327; 25 R. C. L. 981, sec. 229; 36 Cyc. 1112.

Penal statutes cannot be enlarged by implication or extended by inference. This court is without power to amend or repeal a plain general statutory provision, although the court may disapprove of some of its provisions or omissions. White v. State, 4 Okla. Cr. 163, 111 Pac. 1018; City of Shawnee v. Landon, 3 Okla. Cr. 440, 106 Pac. 652.

. Moreover, we think the evidence in this case, considered as a whole, was insufficient to support the verdict. During the time the defendant was coercing and abusing his wife and on this particular occasion she could have informed others or made some outcry. The evidence shows that she must have known when she went to Mead that the purpose of going there was to make money by prostituting her body to strange men. The jury probably concluded that Mrs. Myers had become a prostitute through the influence or coercion of her husband and that his despicable, depraved conduct merited severe pun-

ishment, and that it was a matter of no consequence whether his crimes against her and society were rape or some 'other penal offense. But this court cannot so view it. We are here to construe and apply the law as it is written and to do so in such a way as will operate to guide courts and executive officers in definitely applying the law to similar conditions that may arise in the future.

In paragraph 1 of the court's instructions the court instructed the jury that:

"Rape as applicable to this case, is the act of sexual intercourse accomplished with a female under either of the following circumstances:

"First. Where she is prevented from resisting by threats of immediate and great bodily harm, accompanied by apparent power of execution upon the part of him who makes the threats."

This part of the court's instructions is incomplete and erroneous, in that it omits one of the elements named in the statute, viz., "Not the wife of the perpetrator," except in cases coming within the purview of subdivision eight, where it is provided that the husband may by collusion with another be guilty of rape in any instance where there was a common felonious intent to commit the act.

For the reason stated in this opinion, the judgment of the trial court is reversed.

DOYLE, P. J., and MATSON, J., concur.