## WILLIAM EDWARD DUGGINS v. STATE.
No. A-10126. March 17, 1943.
(135 P. 2d 347.)

LaRue & Monroe, of Clinton, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for defendant in error.

JONES, P. J. The defendant, William Edward Duggins, was charged jointly with one Preston McDowell with the crime of rape in the first degree, a severance was granted, the state elected to try Duggins first, he was tried, convicted, and sentenced to serve 15 years in the State Penitentiary, and has appealed.

The prosecutrix, Christine Allison, testified that she had known the codefendant, Preston McDowell, for about a year and a half before the rape is alleged to have occurred on March 9, 1941; that during this period of time she had been keeping company with McDowell; that on March 9, 1941, she went to the Rainbow Night Club, about two miles southwest of Clinton, with some other friends; that she saw McDowell at the night club and sat in a booth and visited with him; that about 1:30 a. m., she wanted to go home, but the friends who had brought her were not ready to go and she asked McDowell to take her home; that McDowell did not have an automobile but the defendant, Duggins, who was McDowell's friend, also was present at the night club with his car and offered to let McDowell use his car to drive her home; that she and McDowell went outside and got into the back seat of the Ford Tudor sedan; that they sent a boy named Winkleback after Duggins while they sat in the car; that Duggins came out and instead of taking her home he drove through Clinton and towards Weatherford

on Highway 66 and parked on a country lane; that the defendant left the car, walked off, leaving prosecutrix and McDowell at the car; that while Duggins was gone McDowell tried to force her to have sexual intercourse with him, but that she refused; that in a few minutes Duggins returned to the car, and, at the request of McDowell, held the hands of prosecutrix while McDowell had sexual intercourse with her across the front seat of the automobile.

At no place in the examination of prosecutrix did she give her age, but her testimony showed that she had been working at various cafes in and around Clinton. There is no evidence in the record as to her size, but considering the work that she had been doing and the age of some of her associates, she evidently was a girl between 18 and 21 years of age. She admitted that when she was taken home after the act was committed McDowell accompanied her to the door and kissed her goodnight. She testified that when she got in the house her mother asked what was wrong and she told her. That her dress was torn in front and that they notified the officers immediately what had happened. That it was then about 3:30 or 4 o'clock in the morning.

Dr. Harry A. Cushman testified that he examined the prosecutrix on March 10, 1941; that she had a bruised place on her thigh and his examination showed that the hymen had definitely been torn within the last few hours. That he found evidence of spermatozoa from a male which showed up on a smear examined under a microscope. He gave as his opinion that she had had sexual intercourse within the last few hours and that, in his opinion, prior to that time she was a virgin.

Preston McDowell testified for the defendant that he was in the C.C.C. Camp at Clinton. That about 2

o'clock a. m. the prosecutrix came to him at the nightclub and asked if he would take her to town; that he spoke to Duggins and Duggins offered to let him have his automobile to take her to town; that he and prosecutrix got in the back of Duggins car and commenced loving each other; that after a few minutes she saw a boy by the name of Winkleback and told him to tell the defendant, Duggins, to come on out and drive them to town; that they stopped at a filling station in Clinton and got a half-gallon of oil; that they drove out east of town and stopped about a mile off the highway; that Duggins left the car and while he was gone he had sexual intercourse with the prosecutrix with her consent; after they had finished he honked the horn and Duggins came back and drove them home; that he got out of the car, walked to the door with prosecutrix, and kissed her goodnight; that the prosecutrix did not fight him any at all but seemed to enjoy it as much as he did; that the prosecutrix's dress was torn when she jumped out of the car as it slowed down on Main street in Clinton just before they got to the filling station where they filled up with oil; that he did not know why the prosecutrix jumped out but that she skinned her knee and tore her dress a little, but apologized and got back in the car with him. (The prosecutrix testified that she jumped out of the car because she was within a block of her home and wanted to go home; she admitted that she skinned her hands and knees in the jump and then got back in the car and drove to the filling station with the boys after oil.)

The testimony of defendant, Duggins, was in substance the same as McDowell's. He was 21 years of age.

All of the boys and girls who accompanied the prosecutrix to the Rainbow Night Club testified on behalf of defendant to refute the statements of the prosecutrix that

she was wanting to go home but that they were not ready. They each denied that this occurred.

It is insisted that the court erred in not sustaining the motion of the defendant for an instructed verdict of not guilty for the reason that there was no proof that the prosecutrix was not the wife of Preston McDowell, the alleged perpetrator of the crime.

Section 2515, O. S. 1931, 21 O. S. 1941, § 1111, provides:

"Rape is an act of sexual intercourse accomplished with a female, not the wife of the perpetrator, under either of the following circumstances:" Here follows eight separate grounds for rape but all of the listed circumstances come under the enacting clause where the phrase "not the wife of the perpetrator" appears.)

Under this statute it would not be possible for the person who actually commits the act of sexual intercourse with the prosecutrix to be guilty if he were the husband. Myers v. State, 19 Okla. Cr. 129, 197 P. 884, 18 A.L.R. 1057; Parker v. Territory, 9 Okla. 109, 59 P. 9; Young v. Territory, 8 Okla. 525, 58 P. 724.

In the case of Myers v. State, supra [19 Okla. Cr. 129, 197 P. 885, 18 A.L.R. 1057], the court said:

"Unlike the statutes of many other states that adhere to the common-law definition of rape, our statute provides that in eight different conditions or situations sexual intercourse with a female shall constitute rape, and all other situations must be excluded. It would seem, then, under our statute, under circumstances shown by the testimony in this case, that the crime of rape can be committed only on some female 'not the wife of the perpetrator,' except, as provided in subdivision 8, above quoted, the husband may be guilty of the offense perpetrated on the wife in any of the ways pointed out in the statute by collusion with the party actually commit-

ting the act, or by aiding or abetting the principal perpetrator to commit the act, and not otherwise."

In Parker v. Territory, supra [9 Okla. 109, 59 P. 10], it is stated:

"It will be seen by an examination of this statute that the language, 'not the wife of the accused,' is made a part of the definition of the crime itself; and while this statement is negative in its character, it is nevertheless a negative averment necessary to charge the crime of rape. It is a well-recognized principle of common law that, in order to convict any person of any crime, every material element and necessary ingredient to constitute the crime must be proven to the satisfaction of the jury, beyond a reasonable doubt, and every material element and necessary ingredient incumbent upon the commonwealth to prove must be charged in the indictment. Hence, in this case, as the allegation that the prosecutrix was not the wife of the accused was a material and necessary part of the definition of the offense, and the omission of which would render it impossible to make the charge of rape against the accused under the laws of this territory, we think there is no doubt that the failure to charge this fact in the indictment was fatal to the indictment, and that the demurrer should have been sustained by the court below."

The territorial law defining the crime of rape is in the same language as our present law under which this prosecution was instituted, above quoted. In the early case of Young v. Territory, supra [8 Okla. 525, 58 P. 725], construing this statute, the court stated:

"Under the old definition of the crime of rape, and under old forms of pleading, the fact of whether or not the prosecutrix was the wife of the accused did not necessarily enter into the case. But it will be observed that our statute has introduced a new element into the definition of the crime of rape, and such element constitutes one of the essential ingredients of the offense. The defi-

nition of rape, as contained in our statute, cannot be read, and eliminate the clause 'not the wife of the perpetrator.' This new element introduced into the crime is not a matter of excuse for the defendant, to be pleaded and proved by him, but is a necessary and essential element of the crime itself, which must be established by the prosecution in order to make the crime complete, and, if material to prove, then is required to be charged."

Further in the opinion the court quoted with approval from the case of Rice v. State, 37 Tex. Cr. R. 36, 38 S.W. 801, 802, as follows:

"Applying this rule to the construction of this statute, it will be seen that the words 'other than the wife of the person' occur in the body of the enacting clause. The offense cannot be read without reading this. It does not occur in any proviso or distinct, substantive clause, but is a part of the act itself, and, under the rule heretofore laid down, the indictment should negative the fact that the alleged injured female was the wife of the defendant. Of course, it is best that this negation be by direct and positive averment. However, there may be cases in which such negation might otherwise be set out by the pleader; but, if it is attempted, the allegation should be so certain as to exclude the idea which is intended to be negatived in the statute. As applied to this case, the allegation, if not of a direct and positive character, must show by averment, in some way, to a certainty, that the alleged injured female was not the wife of the defendant; that is, it must absolutely exclude the idea that she was his wife. It may be contended that the use of another name than that borne by the defendant sufficiently negatives the idea that she was his wife. There is nothing in our statute requiring or compelling the wife to take or assume the name of her husband. While this is generally the case, yet the wife might retain her own name. She might be married to the defendant, and still be known by her maiden name, or some other name than his."

In the brief of the state the Attorney General con-

cedes that the information must contain the negative aver-
ment that the prosecutrix "was not the wife of the per-
petrator," and that the proof of the state must sustain
this material ingredient of the offense. He asserts that
the case would have to be reversed because of the failure
of the state to make proof of this fact had it not been
that defendant took the witness stand and swore that
he was not married and never had been and this cured
the error.

In the first place, as we construe the testimony of
defendant, he did not testify that he was not married
and never had been. The testimony on this point is as
follows:

"Q. (By County Attorney) Do you go out in the
country that way quite frequent? A. I have been out in
the country, yes. Q. You live in the country? A. Yes,
sir. Q. Not married and never have been? A. Yes."

It would appear from the affirmative answer to this
double-barreled question that the defendant was testify-
ing that he was married. Regardless of the interpretation
which may be given to this testimony, it is evident that
counsel for the state are confused concerning the appli-
cation of the statute. It is wholly immaterial as to
whether the defendant was married, but his guilt rests
solely upon the question as to whether Preston McDowell,
the person who actually committed the act with prosecu-
trix, was her husband. There is no contention that de-
fendant committed the act of sexual intercourse with
prosecutrix, but his guilt is determined solely by the
question as to whether or not he aided and assisted Pres-
ton McDowell in making the alleged felonious assault.
If McDowell was the husband, there would be no rape,
even though defendant held prosecutrix's hands as alleged.
It is conceded that the record is wholly silent as to any

direct proof that prosecutrix was not the wife of McDowell. This proof may be made by circumstantial evidence. There are no facts in this case such as to compel the assumption that there was no valid marriage between McDowell and the prosecutrix. There was ample opportunity for the prosecution to prove this element of the crime directly. But not only did they not offer direct proof that prosecutrix was not wife of McDowell, but there were not sufficient circumstances to justify the submission of this question to the jury.

We feel particularly inclined to this view as applied to the immediate case owing to the unsatisfactory facts as reflected by the record and admissions of counsel. When this case was called for trial, counsel for the defendants, Duggins and McDowell, asked for a severance. The state elected to try Duggins first. Since he was not the man who actually committed the act of sexual intercourse but was only a minor character under the strongest view of the evidence, we are at a loss to understand why this preference was made by the state. Although the record is silent as to what disposition was made of the case against McDowell, upon inquiry by this court the Assistant Attorney General has informed us that after the defendant Duggins was convicted the county attorney reduced the charge against McDowell from rape in the first degree to rape in the second degree and McDowell entered a plea of guilty and was given a term of three years' imprisonment. The defendant Duggins, being sentenced to 15 years' imprisonment, was unable to make bond and has been incarcerated in the State Reformatory at Granite for the past two years. If he had received no more punishment than that meted out to the arch-criminal McDowell, under an allowance for good behavior, he would have had his time served and be at liberty.

There are two other errors shown in the record which would have been sufficient to have required a reversal of this case, towit: The effort of the county attorney to prove the bad reputation of defendant when the defendant had not placed his reputation in issue by offering evidence of his good reputation. Porter v. State, 8 Okla. Cr. 64, 126 P. 699; Morris v. State, 26 Okla. Cr. 399, 224 P. 377; Martin v. State, 29 Okla. Cr. 136, 232 P. 966.

Also, in the closing argument of the county attorney, he exceeded the bounds of propriety when he stated:

"I would like to bring you more facts about this defendant, but the law will not permit me to do it."

This statement was made by the county attorney after he had made an attempt through the sheriff to prove the bad reputation of the defendant, but objection was made by defendant and the objection sustained. It was improper for the county attorney to make such comment to the jury trying to leave the impression with them that the defendant had a bad reputation but his counsel is trying to hide something and therefore objects and the court wouldn't allow him to show just how bad it is over the objection of defendant.

By reason of all of the foregoing, it is our conclusion that the judgment of the district court of Custer county should be reversed.

Based strictly on the record before us, we think the defendant, even if guilty, has been sufficiently punished. However, we do not order the dismissal of the case. We can perceive that there might be some circumstances not known to this court but impelling the county attorney to elect to try defendant, the abettor, before he tried the actual perpetrator. Because of these circumstances he might desire to try defendant again. We are therefore

remanding this case for a new trial or such disposition as appears to the trial court to be legal and proper, under all of the circumstances of the case.

It is so ordered.

BAREFOOT and DOYLE, JJ., concur.