Harvey Olin YOUNG, Appellant,

v.

The CITY OF TULSA, Appellee.

No. M–76–635.

Court of Criminal Appeals of Oklahoma.

April 13, 1977.

R. S. Passo, Baker, Baker & Martin, Tulsa, for appellant.

Waldo F. Bales, City Atty., Richard J. Kallsnick, Asst. City Atty., for appellee.

## OPINION

BLISS, Judge:

The Appellant, Harvey Olin Young, hereinafter referred to as the defendant, was charged, tried before a jury and convicted in the Municipal Court of the City of Tulsa, Case No. 210640 B, of the crime of Assault and Battery Upon a Police Officer. Punishment was assessed at a fine of Three Hundred Dollars ($300.00) and ten (10) days in the City Jail. From a judgment and sentence in accordance with the jury verdict, the defendant has perfected his timely appeal.

Briefly stated the evidence adduced at trial is as follows: Tulsa Police Officer Robert Morrison testified that on the 27th day of January, 1976, he and Officer Eslick had an occasion to go to the Harvey Young Airport on the South 135th East Avenue in Tulsa to serve an arrest warrant on the defendant. Upon arrival at the Young home the officers knocked at the door. Although the defendant was in the home and saw them, he refused to answer the door. Eslick stayed at the house, and Morrison went next door to have the airport manager call the defendant and tell them that they were there to serve a warrant, and if he did not surrender they would have to break down his door. When he returned to the Young house he noticed that the defendant had opened the upstairs window and was talking to Eslick. Morrison yelled to the defendant that they had "burning violation" warrant and that there was no sense in resisting service since all he had to do was call a lawyer and he would be out of jail on bond. The defendant yelled a few obscenities and stated that if the door was broken down he would "blow my head off." The defendant further stated that he was sick, was not going to jail, and wanted to call his lawyer. After the conversation became more heated the officer kicked the door down and he and Eslick walked up the stairs and found the defendant behind a desk. Eslick approached, and when the defendant reached over to pick up a coat Eslick reached down and grabbed his hand. The defendant then hit Eslick in the mouth. Morrison then wrestled the defendant to the carpet and he was handcuffed, struggling all the while. Morrison further testified that he did not hit the defendant but did have his knee in the defendant's back to hold him down. The defendant was taken to the patrol car and he continued to struggle and scream on his way to jail. Since the defendant was violent and kicking in the patrol car, the officers "pulled his handcuffs over the seat so he wouldn't tear our car up."

Officer James Eslick then testified to essentially the same occurrences as Officer Morrison, stating further that he initially advised Young that they had a warrant for his arrest, and asked him to come down and stated that if he wanted to call his lawyer he could do so. The defendant refused to come down and stated that if the officers came in he would blow their heads off. He further stated that when they got upstairs,

Young was sitting behind a high desk and they asked him to stand up and put his hands on the desk. Eslick then moved around the desk to frisk the defendant. When the defendant reached for a coat lying on a chair Eslick, not knowing what might be under the coat, grabbed his hands. Young then struck Eslick in the mouth. The officer suffered a wound requiring four stiches.

The prosecution then called Richard McElfresh, a draftsman, for the City of Tulsa. He testified that he checked the City records and found that the Young home was within the City limits of Tulsa. The prosecution then rested.

The first defense witness was Donald Grose, owner and operator of the flight school at Harvey Young Airport, who testified that around 10:00 o'clock on the morning in question, two officers came into his office and asked the whereabouts of the defendant. Grose stated that he did not know but that Young lived across the parking lot. At approximately 3:00 p. m. Grose noticed one of the officers standing on Young's roof peering through one of the windows. The officer walked back-and-forth on the roof looking in all windows and attempted to pull one open. Subsequently, one of the officers came back to the office and belligerently asked for the defendant's phone number, stating that he wanted Grose to call Young or they were going to "bust down" Young's door. The officer threatened to close down Young's business and take him to jail if he did not cooperate. The officer further stated that he had been serving warrants for six years and "I know how to rough when I need to."

The defendant then took the stand to testify in his own behalf, stating that he was fifty-eight years of age, was the owner of the airport, and operator the same continuously for thirty-five years. He further testified that on January 27th, 1976, two officers came to the house with a warrant for his arrest. When he first heard the knocking he was in bed sick with arthritis. He asked the officers what the problem was and they responded, "none of your damn

business." Young then called his attorney and told the officers to wait a minute. They then proceeded to knock in the door and came running up the stairs with guns drawn. The defendant was standing behind his desk and when he reached to get his coat, Officer Morrison grabbed his right hand and threw him around, causing him to hit Eslick's lip. He further stated that he did not intentionally strike Eslick. He soon found himself on the floor with Morrison choking him with a foot in his back while Eslick was kicking him. He further stated that Morrison tried to restrain Eslick several times. He then related how he was abused by the officers on the way down stairs to the patrol car. The handcuffs put him in extreme pain. He further stated that the officers put his arms over the front seat and raised the head rest, suspending him in the air.

The defense then called Dr. Carl Ingram who testified that he treated the defendant on the day in question in the emergency room of a local hospital. A complete physical examination revealed numerous bruises about the body, a mild black eye and abrasions over the nasal bridge and both wrists. The doctor described the injuries as being consistent with the kind of trauma one would receive in a fight.

Tulsa Police Officer Roger Harmon then testified that he had known the defendant since his childhood and that the defendant had a good reputation for truth and honesty and had no propensity toward violence. The defense then rested.

As a rebuttal witness Officer Lynn Jones then testified that she was in the emergency room seated next to the defendant. She overheard a conversation between the defendant and his attorney wherein the defendant stated that he had hit Officer Eslick. She further stated that the defendant told his attorney that he had been beaten and abused by the officers. Both sides then rested.

The defendant's first assignment of error contends that the trial court erred in failing to declare a mistrial due to the reference of the prosecutor during voir dire

examination of the jury to the right of the defendant not to testify in his own behalf. The record reflects the following comment made by the prosecutor:

"MR. FAIRCHILD: The way the trial will work is that we will put on evidence, put on evidence by the two police officers, Officer Eslick and Officer Morrison, they will come in and testify, and that will be the facts you have to work with. It is not up to the defendant to put on any testimony if he doesn't want to." (Tr. 22).

Defense counsel then moved for a mistrial. The defendant's motion for a mistrial was overruled.

The error made by the prosecutor, directly commenting on the defendant's right not to testify was compounded by the statement made by the court that:

"THE COURT: I think that comment is fair. The jury will be instructed. I think it is a correct comment at this time. That's well understood in the law, it's not necessary for you to provide defense in this matter." (Tr. 22–23).

In support of his assignment of error the defendant cites 22 O.S.1971, § 701 which states:

"In the trial of all indictments, informations, complaints and other proceedings against persons charged with the commission of a crime, offense or misdemeanor before any court or committing magistrate in this State, the person charged shall at his own request, but not otherwise, be a competent witness, and his failure to make such request shall not create any presumption against him nor be mentioned on the trial; if commented upon by counsel it shall be grounds for a new trial."

The defendant urges that the statement was a direct comment upon the failure of the defendant to testify, citing numerous Oklahoma cases. The statute cited applies to comment on failure of the defendant to testify. However, in the instant case, the defendant chose to testify in his own behalf, and the statute has no application. The remarks of the prosecution and the court were error as a matter of constitutional right, *Hanf v. State*, Okl.Cr., 560 P.2d 207 (1977). In *McGaha v. State*, Okl.Cr., 492 P.2d 1101 (1971), this Court held in a situation where the accused failed to testify in his own behalf that the harmless error doctrine under the rule of *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), would apply where there is no reasonable possibility that the comment complained of might have contributed to conviction. In the instant case the error was certainly harmless. The defendant chose to testify in his own behalf and there is no reasonable possibility that the comment could have contributed to the conviction. The defendant's first assignment is without merit.

■■■■ The defendant's second assignment of error urges that the trial court committed reversible error in admitting evidence of the number of warrants that Officer Morrison had served during his term in the warrants office of the police department. During direct examination of Officer Morrison the prosecutor asked the following:

"MR. FAIRCHILD: Okay. Approximately how many warrants do you serve a month?

"MR. BAKER: I object to that, Your Honor. I don't see any relevance.

"THE COURT: Overrule, grant you an exception.

"Q: How many?

"A: How many warrants do I serve a month, my partner and I, oh, approximately almost, probably a hundred. Right at a hundred. We serve quite a few." (Tr. 89)

The defendant argues that the trial court erred in overruling his objection concerning the relevancy of the number of warrants served during a month. We agree that the objection on grounds of relevancy was proper and the court erred in overruling same. However, as stated in *Wolfenbarger v. State*, Okl.Cr., 508 P.2d 694 (1973), the admission of some irrelevant and immaterial evidence does not warrant reversal of a conviction in absence of prejudice to the

rights of the defendant. In the instant case we can see no reasonable probability that the particular answer given by Officer Morrison prejudiced the rights of defendant and influenced the verdict of the jury. The defendant's second assignment of error is without merit.

The defendant's final assignment of error urges that the trial court erred in failing to rule invalid the arrest warrant under which the officers attempted to arrest the defendant and further failing to rule, as a matter of law, that the officers were trespassers. In support of his contention the defendant argues that the arrest warrant was based upon an information which did not state a public offense and, since no public offense was charged, the arrest warrant was void and the officers were mere trespassers in the home of the defendant.

Although a copy of the "open burning" ordinance of the City of Tulsa is not a part of the record, it appears from the briefs that the defendant was charged under Title 17, § 209(C) which states:

"No person shall dispose of refuse or trade waste by open burning or cause or permit such disposal, except as provided below."

A subsequent section enumerates certain exceptions such as outdoor burning in connection with the preparation of food and ceremonial or recreational campfires.

The initial information under which the defendant was charged and which was the basis of the arrest warrant alleged that the defendant did unlawfully, wrongfully, willfully, and knowingly cause and permit the disposal of "waste" by open burning at or near 1500 South 135th East Avenue in the City of Tulsa. The defendant argues that the information failed to allege sufficient facts to negative the numerous exceptions, thereby failing to state an offense upon which a valid arrest warrant could be based. The City argues that the exceptions constitutes affirmative defenses and need not be negatived in the information.

■ In 42 C.J.S. Indictments and Informations § 140, there appears the following statement:

"As stated in Corpus Juris, which has been cited and quoted with approval, it is necessary to negative an exception contained in a statute defining an offense where it forms a portion of the description of the offense, so that the elements thereof cannot be accurately and definitely stated if the exception is omitted. Where, however, the exception or proviso is separable from the description and is not stated as an element thereof, it is regarded as a matter of defense and need not be negatived in the indictment or information, as where the exception merely withdraws certain acts or persons from the operation of the statute, or merely affords a matter of excuse." (Footnote Omitted).

See also, *Groskins v. State*, 52 Okl.Cr. 197, 4 P.2d 117 (1931), wherein this Court held that it is a general rule that it is only when the exception in a penal statute is incorporated in or with the enacting clause of the statute so as to constitute a material part of the definition or description of the offense that it need be negatived in the information.

In *Duggins v. State*, 76 Okl.Cr. 168, 135 P.2d 347 (1943), this Court held that in a prosecution for rape the information must contain the averment that the female on whom the crime was committed was not the wife of the person accused of perpetrating the offense. The enacting clause of the statute which reads as follows, quoting 21 O.S.1941, § 1111:

"Rape is an act of sexual intercourse accomplished with a female, not the wife of the perpetrator, under either of the following circumstances: . . ."

contained the negative averment concerning the victim not being the wife of the perpetrator. The negative averment was a part of the definition of the crime.

■ However, in the instant case, Section 209(C) of the "open burning" ordinance did not contain a negative averment but only made reference to certain exceptions set out in other sections of the ordinance which merely withdrew certain acts from

the operation of the ordinance and afforded a matter of excuse. Therefore, it is our opinion that the City of Tulsa in drafting its information did not have to negative the exceptions and proof of an exception was a matter of defense.

■ The defendant further argues that the initial information alleged that the defendant did wilfully and knowingly cause and permit the disposal of "waste" by open burning, whereas the ordinance prohibited the open burning of "refuse." However, it is our opinion that the substitution of the word "waste" for the statutory term "refuse" did not make the original information void on its face. The original information alleged sufficient facts to advise the defendant of the charges against him. The information was subject to amendment and was in fact amended prior to trial on the charge.

■ For both reasons set out above, it is our opinion that the original information upon which the arrest warrant was based was valid. The arrest warrant was also valid and the officers were not, as a matter of law, trespassers in the Young home. The defendant's final assignment of error is also meritless.

■ From an examination of the record as a whole, it is our opinion that the defendant received a fair and impartial trial before a jury, no substantial right of the defendant was prejudiced. In light of the defendant's record, we find the punishment assessed by the trial court as excessive and MODIFY the sentence to a fine of Three Hundred Dollars ($300.00) and otherwise *AFFIRM.*

BUSSEY, P. J., and BRETT, J., concur.