**Terry L. NAPIER, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–87–850.**

Court of Criminal Appeals of Oklahoma.

Nov. 13, 1991.

Thomas E. Salisbury, Asst. Appellate Public Defender, Norman, for appellant.

Robert H. Henry, Atty. Gen. of Oklahoma and Diane L. Slayton, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

LANE, Presiding Judge:

Appellant, Terry L. Napier, was convicted of First Degree Manslaughter (21 O.S.1981, § 711) after a trial by jury in Creek County District Court, Case No. CRF–85–9–D. In accord with the jury's recommendation, Appellant was sentenced to serve a term of twenty-one (21) years incarceration. He has perfected the instant appeal alleging, *inter alia*, that the results of his blood alcohol test were improperly admitted into evidence. We agree with this contention and reverse the conviction.

Heidi Miller was killed when Appellant's car collided with a car driven by Richard Stewart on Highway 51 near Oilton. Officers at the scene of the accident detected the odor of alcohol in Appellant's car and also at the hospital where Appellant was transported for treatment. Appellant was hostile and combative to the officers who were trying to get him out of his vehicle and also to hospital personnel. The arresting officer testified that Appellant's eyes were bloodshot and that his speech was slurred. Based on these observations, the officer ordered a blood alcohol test pursuant to the implied consent provisions of 47 O.S.1981, § 751(D). The results of the test indicated a blood alcohol level of 0.15%.

At issue here is whether or not the results of the blood test were admissible into evidence notwithstanding the fact that Appellant was not placed under arrest until the afternoon of the day following the accident. Appellant was charged with manslaughter arising out of the commission of a misdemeanor, driving while intoxicated. Our analysis, then, must first focus on the pertinent portions of 47 O.S.Supp.1984, § 11–902, which defines the misdemeanor of driving while intoxicated. It provides:

It is unlawful and punishable as provided in subsection C of this section for any person to drive, operate, or be in actual

physical control of a motor vehicle within this sate who:

1. Has a blood or breath alcohol concentration, as defined in Section 756 of this title, of ten-hundredths (0.10) or more at the time of a test of such person's blood or breath administered within two (2) hours after the arrest of such person....

In the present case, the accident in question happened in the early evening hours of April 29, 1985. The investigating officer, Bill Jackson, arrived at the scene just after 9:30 p.m. Appellant was transported to the hospital for treatment of his injuries. Sometime around 12:30 a.m. on April 30, the officer requested a nurse to draw blood in order to conduct blood alcohol tests. Jackson testified that Appellant was not placed under arrest at that time and there is no evidence that any restraints, other than his physical injuries and need for treatment, impeded Appellant from leaving the hospital.

Jackson went back to the hospital the next afternoon, on May 1, and spoke to Appellant at about 2:00 p.m. After a taking a statement from Appellant, Jackson placed him under arrest. Clearly the blood taken from Appellant was extracted more than two hours prior to his arrest. We cannot conclude on the record before us that even a constructive arrest occurred prior to the actual arrest. There was no testimony by the officer that he intended to arrest Appellant at the hospital the night of the accident, nor is there any evidence that he was detained in any way. *De-Vooght v. State*, 722 P.2d 705 (Okl.Cr. 1986); *Holbird v. State*, 650 P.2d 66 (Okl. Cr.1982); *Wallace v. State*, 620 P.2d 410 (Okl.Cr.1980).

■ The State urges us to find that the two hour rule of Section 11–902 may be triggered by the finding of probable cause which justifies the officer in drawing the blood. While we would like to agree, we find that the words of the statute leave us no avenue to perform the measurement of time from any event other than arrest. While it seems futile to pronounce an unconscious person "arrested" in order to comply with the statute, that seems to be an absolutely necessary action. Because no arrest was made until many hours after the blood was drawn in this case, the results of the blood test should not have been admitted.

■ Although we find that there is some other evidence which may satisfy the disjunctive requirements of Section 11–902(A), the evidence supplied by the blood test was substantially prejudicial to undermine our confidence in the jury's verdict. Accordingly, we find that the conviction must be reversed and sent back for a new trial without the admission of the blood alcohol test results.

■ Based on this decision, we find that we need address only one of Appellant's other allegations, that concerning his retrial after a previous mistrial. At Appellant's first trial, testimony from a witness revealed that the speedometers from the two cars had been removed and sent for testing. Apparently defense counsel was aware of the removal but not of the results of any testing. When the fact of the testing was revealed (but not the results) during examination of a witness, counsel insisted on a mistrial, notwithstanding the State's agreement not to refer to the report. Originally, the trial court refused the mistrial request, finding that the report which indicated Appellant's speed to have been in excess of ninety miles an hour, was not exculpatory, therefore error did not result when the State failed to disclose the report. After much discussion, the State finally agreed to Appellant's demand for a mistrial.

On appeal, Appellant claims that the first mistrial occurred because of the misconduct of the prosecutor, thus the second trial constituted double jeopardy. He cites *Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982), as establishing the rule that if a mistrial occurs due to improper conduct by the prosecutor, the rules against double jeopardy automatically bar a retrial. We find that the rule in *Kennedy* is not quite so broad.

The Court recognized the general rule that double jeopardy is not usually impli-

cated where "the defendant himself has elected to terminate the proceedings against him...." *Id.* at 672, 102 S.Ct. at 2089, 72 L.Ed.2d at 422. It then reconsidered its previous rulings concerning exceptions to the general rule in cases of deliberate misconduct by a prosecutor and formulated this narrow exception:

> A defendant's motion for a mistrial constitutes 'a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact.' ... Where prosecutorial error even of a degree sufficient to warrant a mistrial has occurred, '[t]he important consideration for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed in the event of such error." ... Only where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion. (Citations omitted.)

*Id.* at 676, 102 S.Ct. at 2089, 72 L.Ed.2d at 424.

In the present case, the trial court ruled that the report was not exculpatory and that he would not have allowed its introduction into evidence because it was the product of an inexact science. The court also recognized that there had been no continuing discovery order filed in the case, finding only an order from the magistrate instructing the State to produce all the evidence in its possession at the time of the order. The State provided a copy of the report during the trial, agreed not to introduce it and offered to produce the witness to be interviewed. Defense counsel rejected any curative efforts by either the court or the prosecutor and insisted on a mistrial, which the court eventually granted. Without passing on the propriety of the State's conduct in general, we can say with certainty that the State's actions were not designed to deliberately "goad" or force Appellant into a mistrial. Accordingly, we do not find the exception stated in *Oregon v. Kennedy* to be applicable in the present case. The mistrial was granted by the

absolute demand of Appellant, thus no violation of Appellant's double jeopardy rights has occurred. *Harris v. State*, 777 P.2d 1359, 1364 (Okl.Cr.1989); *Johnson v. State*, 550 P.2d 984, 987 (Okl.Cr.1976).

Based on the foregoing, we find that Appellant's conviction for First Degree Manslaughter must be REVERSED AND REMANDED FOR A NEW TRIAL consistent with the dictates of this opinion.

BRETT and PARKS, JJ., concur.

JOHNSON, J., concurs in result.

LUMPKIN, V.P.J., concurs in part/dissents in part.

LUMPKIN, Vice–Presiding Judge, concurring in part/dissenting in part:

I concur in the Court's determination that a second trial was not precluded by double jeopardy prohibitions. However, I cannot agree with the Court's analysis of the admissibility of the blood test and reversal of the conviction. The Court is correct in its determination that the operative statutory word in 47 O.S.1981, § 11–902 and 47 O.S.1981, § 751, *et seq.* is "arrest". However, the Court does not address or reconcile the provisions of 47 O.S.1981, § 751(D), and *State v. Wood*, 576 P.2d 1181, 1183 (Okl.Cr.1978), with the facts of this case. In addition, it is apparent that the language of Section 11–902 contemplates the arrest of a person as a result of a traffic stop for operating or being in actual physical control of an automobile with the test being administered within two (2) hours of that event.

The Appellant in this case was at times unconscious and other times incoherent on the night of the wreck. The two (2) hour period for purposes of a blood-alcohol analysis must be construed in relation to the time of the offense to which it is relevant. How can an officer effect an "arrest" if a person is injured, unconscious, and undergoing in-patient medical care? What more could the officer have done to preserve the evidence and protect the rights of the Appellant than was done by Trooper Jackson in this situation? While I

agree with the judicial requirements of strict construction of our statutes, I find it difficult to apply both the requirement of arrest with the statutory authorization to extract a blood-alcohol sample from an unconscious person and use that evidence if the requirements of *Wood* are met. The decision by the Court creates more questions than it answers. Since the Court neither distinguishes or overrules *Wood,* I must dissent to the determination of the inadmissibility of the blood test and the reversal of the conviction in this case.