2011 OK CR 20

**STATE**

v.

**MOSLEY.**

No. S–2010–755.

Court of Criminal Appeals of Oklahoma.

July 19, 2011.

Fred J. Shaeffer, Todd Kernal, Attorneys at Law, Shaeffer, Shaeffer & Kernal, Norman, OK, attorneys for defendant at trial.

David M. Brockman, First Assistant D.A., Jennifer P. Austin, Assistant District Attorney, Norman, OK, attorneys for State at trial.

Greg Mashburn, District Attorney, David M. Brockman, First Assistant D.A., Jennifer P. Austin, Assistant District Attorney, Norman, OK, attorneys for appellant on appeal.

Fred J. Shaeffer, Attorney at Law, Norman, OK, attorney for appellee on trial.

***OPINION***

SMITH, Judge.

¶1 Daniel Gene Mosley was charged by Information in the District Court of Cleveland County, Case No. CF–2008–883, with one count of Trafficking in Illegal Drugs (Methamphetamine), under 63 O.S.Supp. 2007, § 2–415 (Count I); and Failure to Display Tax Stamp on CDS, under 68 O.S.2001, § 450.8 (Count II).[1] On October 20, 2008, a preliminary hearing was held before the Honorable Reginald D. Gaston, Special Judge. At the conclusion of the hearing, Mosley was bound over as charged.[2]

¶2 Jury trial commenced in the case on December 7, 2009, before the Honorable Candace Blalock, District Judge.[3] Officer Darin Morgan, of the Norman Police Depart-

---

1. Mosley was charged in the Information's "second page" with having 14 prior convictions, including eight for drug possession, one for "maintaining a dwelling," and five for operating a motor vehicle while under the influence of intoxicating liquor. Because Mosley had more than two prior, drug-related, felony convictions, he was facing a possible mandatory sentence of Life Without Parole on the Count I trafficking count. *See* 63 O.S.Supp.2007, § 2–415(D)(3).

2. At the hearing, defense counsel argued that the search of Mosley, during which the methamphet-

amine was discovered, occurred after an unlawful stop and itself constituted an unlawful search of his person. Mosley subsequently filed a motion to suppress raising these same claims, which was overruled by the Honorable William C. Hetherington, District Judge, after a hearing on July 23, 2009. These issues are not currently before the Court.

3. The Honorable Candace Blaylock was helping cover the December 2009 jury docket of the Honorable William C. Hetherington, who had left the District Court.

ment, testified about the execution of a narcotics search warrant on August 4, 2008, at a residence in Norman, Oklahoma.[4] Morgan testified that just before he arrived, Mosley had come out of the residence, gotten in his car, and was about to back up and drive away. Morgan pulled up, blocked Mosley's car from behind, ordered Mosley out of the car, and "did a pat-down search for weapons." Morgan testified that he noticed a "bulge" in Mosley's left front jeans pocket, which he immediately recognized, by its "feel" and based upon his narcotics experience, as illegal drug contraband. Morgan immediately removed the two baggies of powder that were in Mosley's pocket. Morgan testified that the baggies together contained approximately four ounces of methamphetamine, which typically sells for around $1000 per ounce.[5]

¶3 Morgan then testified about arresting Mosley and transporting him to the Norman Police Department, where he was interviewed. At this point in the trial, the following exchange occurred:

Q. While you were interviewing the defendant, what does he tell you?

A. I talked to him about the methamphetamine that was found. And he admitted to me that he—that he sells metham-

phetamine. And he told me that he had come over to 1324 Atlanta Circle to pick up the methamphetamine. He said he had purchased the methamphetamine for $4,000 for the 4 ounces. And then we talked, and he told me he'd been arrested many times for methamphetamine and was still doing—or was still on paper time for his previous arrests.

Defense counsel immediately asked to approach, noted that Mosley had filed a motion in limine regarding any reference to his prior convictions, and moved for a mistrial. When the court asked the State for a response, the prosecutor responded, "I have no response, Your Honor." The trial court then granted the defense motion for mistrial, asked Officer Morgan to step down, and announced to the jurors that they were going to be excused.[6]

¶4 The court then invited the prosecutor to explain to the jury what had happened.[7] After the jury left, the court allowed the State to make a record, during which the prosecutor asserted that it was a "manifest necessity" to declare a mistrial and to proceed with a new jury.[8] The court responded, "And the Court agrees." [9] And the proceedings were adjourned.[10]

---

4. Morgan testified that he was normally focused on intercepting "criminals on the highway," with the help of his drug dog, Lux. On the day of the search warrant, his assigned role, as a uniformed officer, was to make contact with anyone found outside the residence and, if no one was outside, to knock on the front door and announce that the police had come to execute a search warrant.

5. The lab report in the record indicates that the total weight of the two baggies was 109.1 grams and that the "crystalline substance" found in both tested positive for methamphetamine

6. The court stated: "Ladies and gentlemen, you are going to be excused from this trial. It's one of those things that happens in the course of a trial sometimes. Nobody's fault. Something just happens that is not supposed to happen, and that's just happened."

7. The prosecutor explained as follows:
The detective was not supposed to mention whatsoever that the defendant had any prior contact with law enforcement or that he was on probation in any way, shape, or form. And, obviously, when he introduced that evidence, then it's a taint that we can't cure with you. And it's an absolute necessity that there be a mistrial de-

clared and that jurors who had not heard that testimony are allowed to hear it.

8. The prosecutor stated:
Obviously, Judge, it's an issue that we cannot overcome. We think that it's a—what has been deemed in case law as a manifest necessity. I don't think there's any way that could have been cured with the jury. I obviously had no idea that was coming, as you could probably tell from my face and my stomach dropping. I don't think there's any way we can cure that. It's a manifest necessity to declare a mistrial and to proceed with a jury panel that has not heard that evidence.

9. The court's handwritten trial notes for the day state as follows: "Matter comes on for jury trial. Voir dire conducted. Jury empaneled. Wit[ness] sworn & testimony taken. State's wit[ness] harpoons defense (prior arrest and testimony re: probation). Defense moves for mistrial. Motion sustained. Case cont[inued] to next docket Jan. 11, 2010."

10. The State dismissed Count II, the tax stamp count, that same day.

¶ 5 On January 22, 2010, Mosley filed a motion to dismiss, asserting that it would violate "Double Jeopardy and Due Process principles under both the United States and Oklahoma Constitution[s]" to allow the State to again proceed to trial in the case. Both parties subsequently filed extensive briefs.[11] The Honorable Candace Blalock held a hearing on the issue on July 29, 2010. During the hearing Mosley's attorneys argued that they were totally surprised by Officer Morgan's testimony (about Mosley referring to prior arrests and probation) and that "it's just gross reckless negligence or indifferen[ce] that they allowed this officer to testify in the way he did." Mosley's counsel argued that the court shouldn't separate the behavior of the State from that of the officer and that the officer made the harpoon statement "to just gut our defense." [12]

¶ 6 The State then presented the testimony of Officer Morgan, who asserted that although he was told that he could not talk about the methamphetamine that was later found in Mosley's home, he "never received instruction on not to talk about his previous convictions." [13] After Morgan testified, the First Assistant District Attorney asserted that the two parties are "in agreement as to what the law is" and that the State agreed that it was "necessary to discharge the jury because of what happened." He then argued, however, that Morgan's testimony was not "goading," that the State "didn't need an evidentiary harpoon," and that the State "wanted a jury trial." He concluded by arguing that because Mosley requested the mistrial, the State should be allowed to re-try his case.[14]

¶ 7 At the conclusion of the hearing, the trial court ruled that the State was negligent in failing to advise Morgan regarding what he could not say and that the fact that Mosley requested the mistrial should not matter.[15] The court noted its concern about the fact that Mosley had spent a lot of time in jail and had a right to a speedy trial. The court then granted Mosley's motion to dismiss. In a handwritten "court minute," the court wrote:

> The Court finds after argument that the State was negligent in not instructing the witness re: motion in limine. The Court had no choice but to discharge the jury regardless of Defendant's consent or not to the discharge. The defendant had right to speedy trial issues. The Court finds Double Jeopardy attached. Defendant's motion to dismiss is granted.

¶ 8 The State now appeals this district court ruling, under 22 O.S.Supp.2009, § 1053, and the matter is properly before this Court. The State asserts in its brief that "[t]he trial court correctly found that manifest necessity existed," but that the court's dismissal of the case against Mosley "was not supported by the evidence or the law." [16] Mosley discusses

11. Mosley's brief asserted that "[t]he conduct of the police detective was so egregious" that it would violate both double jeopardy and due process to allow a second trial. The State's brief asserted that because the mistrial had been based upon "manifest necessity" (citing cases), there was no constitutional prohibition on commencing a new trial against Mosley.

12. During their arguments Mosley's attorneys referred to *Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982)—discussed *infra*—and that it talked about the idea of "prosecutorial conduct intended to provoke the defendant and to move him for a mistrial" and later argued that Mosley was "goaded into asking for a mistrial." His attorneys did not, however, explain how prohibiting a retrial in Mosley's case fit with the rule of *Kennedy*.

13. Officer Morgan testified that although he had testified in numerous preliminary hearings—and that he had often referred to a defendant's prior convictions in such testimony—he had only testi-

fied in two jury trials. Morgan maintained that he had never previously heard of a "motion in limine" and that he was not told about the one in effect in Mosley's case.

14. Mosley argued in rebuttal that the State "wanted to get their life without parole statistic" and that if Morgan did not know he was not allowed to testify about Mosley's priors, "that is gross negligence, reckless indifference ... [a]nd I think that meets the level of prosecutorial misconduct and goaded us into this matter."

15. The court stated: "And had they not asked for [the mistrial], I would have had to anyway. So the fact that [the defense] technically made the motion should not be a consideration of mine. They wanted a fair trial. They didn't want this jury because this jury was tainted."

16. The State's brief focuses on the "manifest necessity" issue and relies upon manifest necessity cases from the United States Supreme Court

various "manifest necessity" cases in his brief, but then argues (for the first time) that these cases are *irrelevant,* because the real issue—since Mosley *requested* the mistrial—is whether the prosecutor's conduct "goaded" him into seeking a mistrial. Mosley asserts 1) that the trial court found that the State "goaded" Mosley into requesting a mistrial, and 2) that the record suggests Morgan very deliberately "harpooned" him, thereby "destroying any chance Mr. Mosley had of getting a fair trial." Hence Mosley maintains that the trial court's finding that double jeopardy prevented a retrial should be upheld by this Court.

¶ 9 This Court begins by finding that the record properly before this Court does *not* support Mosley's claim that the trial court granted his motion to dismiss based upon a finding that the State "goaded" him into requesting a mistrial.[17]

■ ¶ 10 However, based upon a review of the record in this case (and others like it), this Court is convinced that clarification is needed regarding the rules for evaluating whether the constitutional protection against Double Jeopardy prevents or allows retrial when a mid-trial mistrial is granted in a case.

In such cases, the first and most important question that must be asked is: Was the mistrial granted at the defendant's request or with his/her consent *or* was the mistrial granted over the defendant's objection or without consent? Whether the defendant consented to the grant of the mistrial is the critical first issue—and often the deciding issue—in determining whether or not he/she can be retried.

¶ 11 The seminal case on this issue is the United States Supreme Court's decision in *Oregon v. Kennedy,* 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982).[18] In *Kennedy,* the Court begins by recognizing that the Double Jeopardy Clause of the Fifth Amendment protects a defendant against multiple prosecutions for the same offense.[19] The *Kennedy* Court recognized that the Double Jeopardy Clause "does not offer a guarantee to the defendant that the State will vindicate its societal interest in the enforcement of the criminal laws in one proceeding."[20] Nevertheless, the Kennedy Court emphasized that "one of the principal threads making up the protection embodied in the Double Jeopardy Clause is *the right of the defendant to have his trial completed before the first jury empaneled to try him ....*"[21] Thus because

---

and this Court. Near the end of its brief, the State cites *United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976), which explains the distinction (for double jeopardy purposes) between mistrials granted at the defendant's request and mistrials granted without the defendant's consent. *See id.* at 606–09, 96 S.Ct. at 1079–80. Yet the State fails to recognize the significance of this distinction.

**17.** The State filed its Notice of Intent to Appeal and Designation of Record in this case on August 6, 2010, and Mosley filed a Counter Designation of Record on August 13, 2010. The district court record was filed in this Court on September 2, 2010. On November 24, 2010, Mosley filed a "Motion to Dismiss" and a "Brief in Support of Motion to Dismiss" in this Court. The brief attached a "Journal Entry," which had apparently been filed in Cleveland County District Court in this case on September 7, 2010, signed by the Honorable Candace L. Blalock. The Journal Entry includes the following sentence: "The Court finds, after argument of the parties, the State goaded and was negligent in not instructing the witness in regards to the Motion in Limine." (With the exception of the added phrase "goaded and," the Journal Entry is essentially identical to the court minute from July 29, 2010.) On December 17, 2010, this Court issued an order

denying Mosley's motion to dismiss. The Journal Entry language upon which Mosley now attempts to rely is not properly before this Court; and the belated reference to "goaded" was not part of any trial court order or ruling at the time the State initiated and perfected the current appeal.

**18.** This Court has cited and followed *Oregon v. Kennedy,* but we have not previously analyzed the theoretical basis for the distinction between the "manifest necessity" doctrine and the "goading" doctrine of *Kennedy. See, e.g., Brewer v. State,* 1986 OK CR 55, ¶¶ 3–6, 718 P.2d 354, 359, *overruled on other grounds by Fitzgerald v. State,* 1998 OK CR 68, ¶ 28 n. 43, 972 P.2d 1157, 1169 n. 43; *Napier v. State,* 1991 OK CR 120, ¶¶ 8–11, 821 P.2d 1062, 1064–65; *McCarty v. State,* 1995 OK CR 48, ¶¶ 59–60, 904 P.2d 110, 126–27.

**19.** 456 U.S. at 671, 102 S.Ct. at 2087 (citing *United States v. Dinitz,* 424 U.S. 600, 606, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267 (1976)).

**20.** *Id.* at 672, 102 S.Ct. at 2087 (citations omitted).

**21.** *Id.* at 673, 102 S.Ct. at 2088 (emphasis added).

the defendant has a double jeopardy right to have his first trial "completed" before the first jury empaneled to try his case, when a mid-trial mistrial is declared, it makes all the difference—for double jeopardy purposes—whether or not the defendant consented to this result.

¶ 12 The *Kennedy* Court acknowledged that "[w]here the trial is terminated over the objection of the defendant, the classical test for lifting the double jeopardy bar to a second trial is the 'manifest necessity' standard first enunciated in Justice Story's opinion for the Court in *United States v. Perez*, 22 U.S. 579, 9 Wheat. 579, 580, 6 L.Ed. 165 (1824)." [22] The *Kennedy* Court noted that the *Perez* case involved the most common form of "manifest necessity," *i.e.*, "the hung jury," when a mistrial is declared as a result of a jury being unable to reach a verdict. [23] The *Kennedy* Court noted that other situations have been recognized as "meeting the 'manifest necessity' standard," but that "the hung jury remains the prototypical example." [24] The Court concluded, "The 'manifest necessity' standard provides sufficient protection to the defendant's interests in having his case finally decided by the jury first selected while at the same time maintaining 'the pub-

lic's interest in fair trials designed to end in just judgments.' " [25]

¶ 13 The *Kennedy* Court insisted, however, that a mistrial granted at the defendant's request presents an entirely different situation:

> *[I]n the case of a mistrial declared at the behest of the defendant,* quite different principles come into play. Here the defendant himself has elected to terminate the proceedings against him, and *the 'manifest necessity' standard has no place in the application of the Double Jeopardy Clause.*[26]

The *Kennedy* Court noted that in cases where a mistrial is granted at the request of the defendant, the general rule is that the Double Jeopardy Clause does *not* prohibit retrial, but that there is a "narrow exception" to this rule, namely, "where the prosecutor's actions giving rise to the motion for mistrial were done 'in order to goad the [defendant] into requesting a mistrial.' " [27]

¶ 14 The *Kennedy* Court acknowledged that the Supreme Court's prior cases in this area had not always been entirely consistent or clear and that some cases seemed to suggest a "broader rule" for interpreting prosecutorial misconduct (leading to a mistrial) as

---

**22.** *Id.* at 672, 102 S.Ct. at 2087. This Court recently invoked and applied the "manifest necessity" doctrine. *See Randolph v. State*, 2010 OK CR 2, 231 P.3d 672. In *Randolph*, we noted that this Court had been applying this doctrine since statehood and quoted the following language, from *Loyd v. State*, 1911 OK CR 255, 6 Okla.Crim. 76, 116 P. 959, as summarizing the rule for determining when the grant of a mistrial functions as an "acquittal" of the defendant: First. The defendant must be upon trial before a court of competent jurisdiction. Second. The information or indictment against the defendant must be sufficient to sustain a conviction. Third. The jury must have been impaneled and sworn to try the case. Fourth. After having been so impaneled and sworn to try the case[,] the jury must have been unnecessarily discharged. Fifth. That such discharge of the jury must have been without the consent of the defendant. When those things all occur, then the discharge of the jury operates as an acquittal of the defendant *Randolph*, 2010 OK CR 2, ¶ 8, 231 P.3d 672, 675 (quoting *Loyd*, 6 Okla.Crim. at 84, 116 P. at 962). The phrase "manifest necessity" has evolved from Supreme Court cases as a shorthand for the fourth requirement of this rule, *i.e.*, that in cases where the defendant objects to the discharge of

the jury (the fifth requirement), there must be a "manifest necessity" for the mistrial, in order to retry the defendant. *See Perez*, (9 Wheat) 22 U.S. 579, 580, 6 L.Ed. 165 (1824).

**23.** 456 U.S. at 672, 102 S.Ct. at 2087.

**24.** *Id.* (citing *Arizona v. Washington*, 434 U.S. 497, 509, 98 S.Ct. 824, 832, 54 L.Ed.2d 717 (1978); *Illinois v. Somerville*, 410 U.S. 458, 463, 93 S.Ct. 1066, 1070, 35 L.Ed.2d 425 (1973)).

**25.** *Id.* (quoting *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949)).

**26.** *Id.* at 672, 102 S.Ct. at 2088 (emphasis added) (citing *Dinitz*, 424 U.S. at 607–10, 96 S.Ct at 1079–81).

**27.** *Id.* at 673, 102 S.Ct. at 2088 (quoting *Dinitz*, 424 U.S. at 611, 96 S.Ct. at 1081). The Kennedy Court noted that in such "goading" cases, "the defendant's valued right to complete his trial before the first jury would be a hollow shell if the inevitable motion for mistrial were held to prevent a later invocation of the bar of double jeopardy in all circumstances." *Id.*

causing a double jeopardy bar to retrial.[28] Nevertheless, the Kennedy Court held as follows:

> [T]he circumstances under which [ ] a defendant [who consented to a mistrial] may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was *intended to provoke the defendant into moving for a mistrial.*[29]

The Court emphasized the critical distinction-in terms of double jeopardy—between prosecutorial misconduct that could jeopardize a defendant's right to a fair trial and misconduct committed with the intent of provoking a mistrial: "Prosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion, therefore, does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause."[30] Hence the distinction often comes down to evaluating whether the prosecutorial misconduct at issue was inspired by an overzealous State attempt to "win" at trial or, rather, was based upon a perception that the State might be about to "lose" and hence that a retrial of the defendant was a better result than an acquittal or other unfavorable verdict.[31]

¶ 15 And the *Kennedy* Court likewise recognized that the distinction between the situation where a retrial is presumptively permissible (mistrial at request of or with consent of defendant) and the situation where a retrial is permissible only if the State can establish "manifest necessity" for the mistrial (because mistrial granted over defendant's objection or without consent) is the defendant's desire to continue with his trial—and receive a verdict from the empaneled jury—or not.

> A defendant's motion for a mistrial constitutes "a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact." ... Where prosecutorial error even of a degree sufficient to warrant a mistrial has occurred, "[t] he important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed in the event of such error."[32]

Hence the defendant's right to a verdict from the first jury empaneled to hear his case makes the defendant's consent to any midtrial mistrial critical.[33]

■ ¶ 16 In the current case, Mosley clearly requested that the trial court declare a mistrial. In addition, the record leaves no

28. *Id.* at 673–79, 102 S.Ct. at 2088–91 (reviewing prior cases and implications).

29. *Id.* at 679, 102 S.Ct. at 2091 (emphasis added).

30. *Id.* at 675–76, 102 S.Ct. at 2089.

31. In *Dinitz,* upon which the Kennedy Court substantially relied, the Supreme Court noted that prosecutorial actions *intended* to provoke a mistrial often occur in situations where the State fears that an acquittal is possible. The Dinitz Court wrote:
The Double Jeopardy Clause does protect a defendant against governmental actions intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions. It bars retrials where "bad-faith conduct by judge or prosecutor" ... threatens the "(h)arassment of an accused by successive prosecutions or declaration of a mistrial *so as to afford the prosecution a more favorable opportunity to convict"* the defendant.
424 U.S. at 611, 96 S.Ct. at 1081 (emphasis added) (all citations omitted).

32. 456 U.S. at 676, 102 S.Ct. at 2089 (citations omitted). The *Kennedy* Court noted that when trial error or prosecutorial misconduct (such as that which could justify a mistrial) results in a reversal on *appeal,* the Double Jeopardy Clause does not prohibit retrial of the defendant, unless the reviewing court also finds that the evidence presented was not sufficient to support the conviction(s). *See id.* at 676 n. 6, 102 S.Ct. at 2090 n. 6.

33. The critical importance of the defendant's right to decide whether or not to give up his right to the original jury's verdict—when his right to a fair trial has been jeopardized—suggests that trial courts should proceed very cautiously when deciding whether or not to grant a mistrial over a defendant's objection. *Cf. Randolph,* 2010 OK CR 2, ¶¶ 11–12, 231 P.3d at 676–77 (where trial court granted mistrial over defendant's objection after finding "case would be reversed on appeal," based on multiple evidentiary harpoons, and that it made "no sense to continue" with the trial, which would amount to "wasting" time and resources of court and of defendant).

doubt that on the day the mistrial was declared, the parties, as well as the trial court, expected that Mosley's case would be retried. Furthermore, there is nothing in the record that would support a finding that the State, in eliciting the testimony from Officer Morgan, was intentionally causing a mistrial or "goading" Mosley into seeking a mistrial. Although the State did not attempt to justify Morgan's improper testimony and did not seek a "curative" admonition or other remedy, there is nothing in the record that supports a conclusion that the State was intentionally aborting this first trial of Mosley; and the State had no reason to do so.

¶ 17 The trial court's finding that the State was "negligent" in not properly instructing Morgan regarding the limits of his testimony clearly did not justify the court's conclusion that the Double Jeopardy Clause prevented retrial in this case.[34] Although both parties argued the doctrine of "manifest necessity" to the court, this doctrine simply does not apply to the current case, since Mosley requested the mistrial that was granted. Furthermore, the trial court was incorrect to suggest that whether or not Mosley consented to the mistrial was not a significant factor in determining whether it should be granted.[35] The trial court's grant of a mistrial in this case and subsequent grant of the motion to dismiss reflects a genuine and laudable concern with the defendant's right to a fair trial (and also a "speedy trial"). Yet because Mosley sought the mistrial that was granted in his case (and was not "goaded" into doing so), this Court concludes that the trial court's determination that the constitutional protection against double jeopardy prohibited a retrial of Mosley was clearly erroneous and an abuse of discretion.[36]

¶ 18 The trial court did not apply the proper test in evaluating the double jeopardy question before it, nor would the record in the current case support a conclusion that the prosecutors intentionally provoked or goaded Mosley into seeking a mistrial.[37] Hence the Double Jeopardy Clause of the United States and the Oklahoma Constitutions poses no bar to retrial in the current case.

### Decision

¶ 19 The decision of the district court in sustaining Mosley's motion to dismiss based upon Double Jeopardy is **REVERSED** and this case is **REMANDED** for further proceedings consistent with this opinion. Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2010), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

A. JOHNSON, P.J., LEWIS, V.P.J., and C. JOHNSON, J.: concur.

LUMPKIN, J.: concur in results.

34. And Mosley's assertion that the prosecutor's conduct constituted "gross negligence" or "reckless indifference" would likewise fall short of establishing intent to provoke or goad a mistrial.

35. This Court need not and does not decide whether the circumstances of the current case would have justified a finding of "manifest necessity" in this case.

36. *See Napier,* 1991 OK CR 120, ¶¶ 11–12, 821 P.2d 1062, 1065 (rejecting double jeopardy goading claim and remanding for new trial); *United*

*States v. Valadez–Camarena,* 163 F.3d 1160, 1163 (10th Cir.1998) ("[I]n the specific context of double jeopardy goading cases, we will uphold the trial court's determination unless we conclude it is clearly erroneous."); *Randolph,* 2010 OK CR 2, ¶ 17, 231 P.3d at 678–79 (applying abuse of discretion standard in manifest necessity case).

37. The *Kennedy* Court noted that whether a prosecutor intentionally provoked a mistrial is a finding of fact to be made by the trial court. *See* 456 U.S. at 675, 102 S.Ct. at 2089.