267 P.3d 403 (2011)
164 Wash.App. 867
STATE of Washington, Respondent,
v.
Benjamin Clinton STRIBLING, Appellant.
No. 39931-8-II.
Court of Appeals of Washington, Division 2.
November 9, 2011.
*404 Peter B. Tiller, The Tiller Law Firm, Centralia, WA, for Appellant.
Jason Howard Laurine, Cowltiz County Prosecutor's Attorney Off., Kelso, WA, for Respondent.

PART PUBLISHED OPINION
JOHANSON, J.
¶ 1 Benjamin Clinton Stribling appeals his numerous sex offense convictions involving a minor. In the published part of this opinion, we consider Stribling's argument that insufficient evidence supports his sexual exploitation of a minor conviction (count I). We also address Stribling's arguments about the felony classification listed on his judgment and sentence for his attempted possession of depictions of a minor engaged-in-sexually-explicit-conduct conviction (count II). We agree with Stribling that insufficient evidence supports his conviction on count I and that his judgment and sentence incorrectly lists the felony classification on his count II conviction. We reverse and vacate his conviction for sexual exploitation of a minor, and we remand for resentencing.[1]

FACTS
¶ 2 On July 6, 2009, the State charged Stribling in an amended information with one count of sexual exploitation of a minor (count I), one count of attempted possession of depictions of a minor engaged in sexually explicit conduct (count II), and seven counts of felony communication with a minor for immoral purposes (counts III through IX). In the amended information, all of the felony communication with a minor for immoral purposes counts (counts III through IX) contained two separate "on or about" dates for when the alleged criminal acts took place. Counts III, VIII, and IX's two "on or about" dates matched, but the two separately included dates in counts IV through VII did not match.[2]
¶ 3 The primary evidence that the State relied on for its allegations was a series of e-mails that Stribling exchanged with K.C., the underage victim. The State specified the exact e-mail evidence that it would rely on to prove Stribling's guilt for each charged offense in a document titled "Evidence Pertaining to Amended Charges" ("evidentiary memo").[3] For counts IV through VII, the date of the emails that the State relied on matched the first "on or about" date in the charging information. For count VIII, the State indicated that it would rely on a March 11, 2008 e-mail, even though both dates in *405 the amended charging information alleged that the criminal act occurred "on or about March 16, 2008." CP (Dec. 18, 2009) at 4.
¶ 4 Stribling waived his right to a jury trial, and a bench trial began on July 27. In the e-mails that the State presented, Stribling asked K.C. multiple times to send him nude photographs of her. K.C. agreed to send Stribling some pictures, but she repeatedly refused to take or send any nude photographs. On July 30, the trial court found Stribling guilty on counts I through VIII and entered a not guilty verdict on one of the felony communication with a minor for immoral purposes charges (count IX).
¶ 5 In September, the State noticed the non-matching dates in counts IV through VII of the amended information, and the discrepancy between the dates in count VIII of the amended information and the e-mail date referenced in the evidentiary memo. The State requested the trial court to (1) ignore the inaccuracies as proofreading mistakes or (2) conform the amended information to "the proof, which was the first date in every count." 5 Verbatim Report of Proceedings (VRP) at 7. In October, before sentencing, the trial court ruled that the amended information was facially valid and that Stribling failed to show that the inaccuracies prejudiced him.
¶ 6 At sentencing, the trial court found that Stribling's convictions for sexual exploitation of a minor (count I) and attempted possession of depictions of a minor engaged in sexually explicit conduct (count II), constituted the same criminal conduct. Stribling's judgment and sentence listed his count II conviction as a class B felony. Stribling appeals challenging each of his convictions on various grounds.

ANALYSIS

I. SUFFICIENCY OF EVIDENCE
¶ 7 First, we must determine whether the State presented sufficient evidence to sustain Stribling's conviction for sexual exploitation of a minor (count I). We review a claim of insufficient evidence for "`whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt.'" State v. Drum, 168 Wash.2d 23, 34-35, 225 P.3d 237 (2010) (quoting State v. Wentz, 149 Wash.2d 342, 347, 68 P.3d 282 (2003)). An appellant challenging the sufficiency of evidence "necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from [that evidence]." Drum, 168 Wash.2d at 35, 225 P.3d 237. Circumstantial and direct evidence are equally reliable in determining sufficiency of the evidence. State v. Delmarter, 94 Wash.2d 634, 638, 618 P.2d 99 (1980).
¶ 8 A person is guilty of sexually exploiting a minor if the person "[a]ids, invites, employs, authorizes, or causes a minor to engage in sexually explicit conduct, knowing that such conduct will be photographed or part of a live performance." RCW 9.68A.040(1)(b). Stribling argues that this statute requires something more than asking a minor to send a nude photograph. The State counters that asking a minor to send a nude photograph falls squarely under the statute's plain language of "invit[ing]" a minor to engage in sexually explicit conduct. Br. of Resp't at 15; RCW 9.68A.040(1)(b). We are constrained to agree with Stribling's argument, we reverse and vacate his conviction for sexual exploitation of a minor (count I), and we remand for resentencing.
¶ 9 The question in this case is a matter of first impression: Did the legislature intend to criminalize an invitation to a minor to take and send nude photographs, even if the minor does not agree to take or send nude photographs and no pictures are actually taken? Our basic duty in interpreting any statute is to ascertain and carry out the legislature's intent. State v. J.P., 149 Wash.2d 444, 450, 69 P.3d 318 (2003). The starting point is the statute's plain language and ordinary meaning. J.P., 149 Wash.2d at 450, 69 P.3d 318. When the plain language is unambiguous, the legislative intent is apparent, and we will not employ principles of construction to construe the statute otherwise. J.P., 149 Wash.2d at 450, 69 P.3d 318. We may discern a statute's plain meaning "`from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question.'" J.P., *406 149 Wash.2d at 450, 69 P.3d 318 (quoting Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wash.2d 1, 11, 43 P.3d 4 (2002)). When the statute is ambiguous, though, we may determine the legislature's intent by applying recognized principles of statutory construction. J.P., 149 Wash.2d at 450, 69 P.3d 318. In construing a statute, we avoid a reading that produces absurd results. J.P., 149 Wash.2d at 450, 69 P.3d 318.
¶ 10 Our Supreme Court has already held that RCW 9.68A.040(1)(b) is not facially ambiguous[4]State v. Chester, 133 Wash.2d 15, 21, 940 P.2d 1374 (1997). "The statute sets out the elements of the offense, making it a crime to (1) aid, invite, employ, authorize or cause a minor to (2) engage in sexually explicit conduct (3) knowing that the conduct will be photographed." Chester, 133 Wash.2d at 22, 940 P.2d 1374. But as Chester acknowledged, the statute does not define the words "aids, invites, employs, authorizes or causes." Chester, 133 Wash.2d at 22, 940 P.2d 1374; see RCW 9.68A.040.
¶ 11 In Chester, the defendant placed a hidden camera beneath a bed to film his stepdaughter dressing after she took a shower. Chester, 133 Wash.2d at 17-18, 940 P.2d 1374. The issue was whether the statute prohibited a person from filming a nude child, without the child's knowledge, and where the exhibition of nudity is accomplished without the defendant's direct involvement. Chester, 133 Wash.2d at 21, 940 P.2d 1374. To answer this question, the Chester court considered how the facts of the case applied to the words "aids, invites, employs, authorizes or causes." Chester, 133 Wash.2d at 22, 940 P.2d 1374.
¶ 12 The Chester court used the words' ordinary meanings, finding that "aid" "means to support, assist, help or strengthen"; "invite" "means to offer an incentive or inducement or to request the participation or presence of a person"; "employ" "means to engage in one's service or to hire or use"; "authorize" "means to empower or to give a right or authority to act"; and "cause" "means to be the cause of, to bring about, to induce or to compel." Chester, 133 Wash.2d at 22, 940 P.2d 1374. The court noted, "Each of these words is an active verb. Each requires some affirmative act of assistance, interaction, influence or communication on the part of a defendant which initiates and results in a child's display of sexually explicit conduct." Chester, 133 Wash.2d at 22, 940 P.2d 1374 (emphasis added).
¶ 13 Based on the ordinary meanings of these words, the Chester court held that the statute did not criminalize the photographing of a child "where there is no influence by the defendant which results in the child's sexually explicit conduct." Chester, 133 Wash.2d at 23, 940 P.2d 1374. The court held,
Although [Chester] intended to observe [his stepdaughter], he did not communicate with her in any way and he did not assist her in any way. There is no evidence in the record that the Defendant aided (supported or helped), invited (requested or induced), employed (hired or used), authorized (empowered or gave a right) or caused (brought about, induced or compelled) his stepdaughter to engage in sexually explicit conduct.
Chester, 133 Wash.2d at 22-23, 940 P.2d 1374.
¶ 14 Even though the Chester court did not address the specific issue before us now, we are constrained by our Supreme Court's conclusion that the statute "requires some affirmative act . . . on the part of a defendant which initiates and results in a child's display of sexually explicit conduct." Chester, 133 Wash.2d at 22, 940 P.2d 1374 (emphasis added). Indeed, this interpretation is consistent with, and gives meaning to, the statute's third element: that the person has "know[ledge]" that sexually explicit conduct "will be photographed or part of a live performance." RCW 9.68A.040(1)(b) (emphasis added).
¶ 15 RCW 9A.08.010(1)(b) states:
A person knows or acts knowingly or with knowledge when:
(i) he or she is aware of a fact, facts, or circumstances or result described by a statute defining an offense; or

*407 (ii) he or she has information which would lead a reasonable person in the same situation to believe that facts exist which facts are described by a statute defining an offense.
The knowledge element in the statute at issue would thus require (1) actual awareness that sexually explicit conduct "will be photographed or part of a live performance" or (2) information that would lead a reasonable person in the defendant's situation to believe that sexually explicit conduct "will be photographed or part of a live performance." RCW 9.68A.040(1)(b); RCW 9A.08.010.
¶ 16 Here, the pivotal question is what meaning the legislature intended in the language "will be photographed or part of a live performance." RCW 9.68A.040(1)(b). We first note that the legislature used "will be" instead of "could be." This choice is instructive because "will be" conveys inevitability, whereas "could be" connotes conditionality. That the legislature used "will be" indicates that it intended to punish those who, through some affirmative act, induced a minor to engage in sexually explicit conduct that is then actually photographed or part of a live performance.
¶ 17 Similarly, the statutory definitions of "photograph" and "live performance" also indicate that the legislature intended to punish those who cause the actual creation of photographs or live performances of minors. Former RCW 9.68A.011 (2002). "Photograph" is defined as "to make a print, negative, slide, digital image, motion picture, or videotape. . . anything tangible or intangible produced by photographing." Former RCW 9.68A.011(1). "Live performance" is defined as "any play, show, skit, dance, or other exhibition performed or presented to or before an audience of one or more, with or without consideration." Former RCW 9.68A.011(5). These definitions contemplate that a photograph will be taken or that a live act actually occurs. This language is not indefinite; a "photograph" is defined as "to make" something tangible or intangible and "live performance" is defined as something "performed or presented." RCW 9.68A.011(1), (5). Read with these definitions, we are convinced that the legislature intended RCW 9.68A.040(1)(b) to require an actual photograph to be taken or an actual live performance to occur. If the legislature had intended otherwise, it would have said so.
¶ 18 Applying our interpretation of the statute to the facts before us, we hold that the State presented insufficient evidence to convict Stribling of sexual exploitation of a minor under RCW 9.68A.040(1)(b). Stribling asked K.C. for nude photos, but K.C. specifically and steadfastly refused to send him any.[5] At no point did K.C. agree to take or *408 send nude photographs. The State relied on evidence that Stribling invited K.C. to take nude photographs, which is not a crime under RCW 9.68A.040(1)(b).
¶ 19 Based on this evidence, and our understanding of the statute, there is insufficient evidence to support a finding that Stribling knew that K.C. would engage in sexually explicit conduct that "will be photographed or part of a live performance." RCW 9.68A.040(1)(b). K.C.'s refusals to take or send nude photographs indicate quite the opposite, namely, that K.C. would not engage in sexually explicit conduct that would be photographed. We reverse and vacate Stribling's conviction for sexual exploitation of a minor (count I), and we remand for resentencing.

II. JUDGMENT AND SENTENCE ERROR
¶ 20 The next issue is whether Stribling's judgment and sentence incorrectly reflects his conviction for attempted possession of depictions of a minor engaged in sexually explicit conduct (count II) as a class B felony. Stribling argues that the State proved only that he was guilty of second degree attempted possession of depictions of a minor engaged in sexually explicit conduct, which would be a gross misdemeanor. RCW 9.68A.070; RCW 9A.28.020. The State concedes the issue but argues that Stribling suffered no prejudice because the trial court found that his conviction for count II was the same criminal conduct as his conviction for count I, sexual exploitation of a minor, and thus, did not include it in his offender score. The State asks us to remand for correction of his judgment and sentence only. Stribling's specific argument, and the State's concession, is misplaced because his relies on the wrong version of the applicable criminal statute. But, we agree with Stribling that the class B felony classification for count II on his judgment and sentence is erroneous.
¶ 21 Stribling's arguments on appeal cite to the current version of RCW 9.68A.070, which delineates two degrees for possession of depictions of a minor engaged in sexually explicit conduct. But the legislature did not establish two separate degrees for this offense until June 2010, two years after Stribling's date of crime. LAWS of 2010, ch. 227, § 6. Under former RCW 9.68A.070 (2006) all convictions for possessing depictions of a minor engaged in sexually explicit conduct were class B felonies. And because the trial court convicted Stribling of attempting to commit this crime, the offense in Stribling's instance is actually a class C felony. RCW 9A.28.020(3)(c). Because our reversal of count I requires resentencing, on remand we also direct the trial court to resentence on count II as a class C felony, which in this case has a presumptive sentence of 60 months.[6]
¶ 22 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
I concur: VAN DEREN, J.
*409 PENOYAR, C.J. (concurring in part, dissenting in part).
¶ 31 I concur with the majority in every respect but one: I respectfully dissent from the majority's conclusion that insufficient evidence supports Stribling's conviction for sexual exploitation of a minor (count I). I would affirm this conviction.
¶ 32 As the majority points out, our Supreme Court has found that the relevant subsection of the sexual exploitation of a minor statute, RCW 9.68A.040(1)(b), is not facially ambiguous. State v. Chester, 133 Wash.2d 15, 21, 940 P.2d 1374 (1997). "The statute sets out the elements of the offense, making it a crime to (1) aid, invite, employ, authorize or cause a minor to (2) engage in sexually explicit conduct (3) knowing that the conduct will be photographed." Chester, 133 Wash.2d at 22, 940 P.2d 1374. Here, the State presented evidence that Stribling invited a minor to take nude photographs of herself and to send them to him for the purpose of his sexual stimulation. See former RCW 9.68A.011(3)(e) (2002) ("Sexually explicit conduct" includes "[e]xhibition of the genitals or unclothed pubic or rectal areas of any minor, or the unclothed breast of a female minor, for the purpose of sexual stimulation of the viewer."). Stribling's conduct clearly falls within the ambit of the statute.[7]
¶ 33 But the majority finds the proof lacking in two regards. First, the majority concludes that Stribling did not commit sexual exploitation of a minor because the minor refused to accept his invitation. The majority bases its conclusion on Chester's interpretation of the statute's "aids, invites, employs, authorizes or causes" element: "Each of these words is an active verb. Each requires some affirmative act of assistance, interaction, influence or communication on the part of a defendant which initiates and results in a child's display of sexually explicit conduct." Majority at 6 (quoting Chester, 133 Wash.2d at 22, 940 P.2d 1374 (emphasis added)).
¶ 34 The issue in Chester was whether the defendant's interactions with the minor victim fulfilled the "aids, invites, employs, authorizes or causes" element of RCW 9.68A.040(1)(b). See 133 Wash.2d at 22-23, 940 P.2d 1374. There, the defendant secretly filmed the minor victim while she was unclothed. Chester, 133 Wash.2d at 17, 940 P.2d 1374. There is no indication that the State attempted to prove that the defendant in that case aided, invited, employed, or authorized the victim to do anything. Although the Chester court discussed all five action verbs in the statute, it appears that the discussion of any verb other than "cause" was dicta. See, e.g., Chester, 133 Wash.2d at 21, 940 P.2d 1374 ("The question before us is whether the statute prohibits a person from filming a nude child, without the child's knowledge and where the exhibition of nudity is accomplished without the involvement of the defendant.") Because a "cause" is not such without a "result," it was entirely logical for the Supreme Court to require a result in those circumstances.
¶ 35 But by requiring a "result" in a case, like this one, that turns on whether a defendant invited the minor to engage in sexually explicit conduct, the majority has, in effect, added an element to RCW 9.68A.040(1)(b). A defendant's invitation is no longer enough under the statute; the minor must accept the invitation. This is inconsistent with Chester's definition of "invite" ("to request the participation or presence of a person"), which rightly focuses on the defendant's actions and not on the victim's response. 133 Wash.2d at 22, 940 P.2d 1374 (quoting WEBSTER'S THIRD NEW INT'L DICTIONARY 1190 (1986)). Because Chester's "result" language is dicta in the context of a defendant's invitation, and because *410 Stribling's repeated invitations to the victim to take nude photographs of herself clearly fit the Webster's definition of "invite" that our Supreme Court approved in Chester, I would hold that the State's evidence was sufficient to convict Stribling under RCW 9.68A.040(1)(b).
¶ 36 I also disagree with the majority's second rationale, which concludes that the State cannot prove the element of "knowing that such conduct will be photographed" until the conduct is actually photographed. RCW 9.68A.040(1)(b). The majority correctly points out that "will be" has a different meaning than "could be." Majority at 8. But I cannot agree with the majority's conclusion that "will be" means "has been." Here, Stribling specifically invited the victim to create the photographs. Thus, he knew that if the victim accepted his invitation, she would create the photographs. This satisfies RCW 9.68A.040(1)(b)'s knowledge element. By construing the knowledge element to require the minor to accept the invitation, the majority writes "invite" out of the statute.
¶ 37 The jury accepted the State's proof that Stribling invited the victim to take nude photographs of herself. He is guilty under the plain language of the statute.
NOTES
[1] Stribling was also convicted of six counts of felony communication with a minor for immoral purposes. In the unpublished portion of the opinion, we address Stribling's argument that the trial court improperly found that the State's amended information was facially valid and did not otherwise prejudice him. We discern no error in the amended information and affirm the trial court's rulings on this issue.
[2] For example, count IV in the amended information states:

The defendant, in the County of Cowlitz, State of Washington, on or about March 04, 2008, after having been previously convicted of a felony sexual offense in another state, to-wit: Aggravated Incest, did communicate with Jane Doe, dob: 3/10/96, a person under the age of 18 years and/or a person the defendant believed to be under the age of 18 years, for immoral purposes of a sexual nature and/or on or about March 8, 2008, did communicate with Jane Doe, dob: 3/10/96, (a different communication from Count III), a person under the age of 18 years and/or a person the defendant believed to be under the age of 18 years, for immoral purposes of a sexual nature, through the sending of an electronic communication; contrary to RCW 9.68A.090(2) and against the peace and dignity of the State of Washington.
CP (Dec. 18, 2009) at 2 (emphasis added).
[3] The State actually filed two separate documents titled "Evidence Pertaining to Amended Charges"one on July 6, 2009, when filing the amended information, and one on July 29, 2009, during Stribling's bench trial. CP (Aug. 2, 2010) at 1-2; CP (Oct. 11, 2010) at 10-11. The documents minimally differed with the primary change being the inclusion of more specific information for count V in the July 29 document. An example of the information included in these documents is:

Count 4:
The e[-]mail with time stamp: 4 mar 2008 15:21:38-0800 CP (Aug. 2, 2010) at 2.
[4] The legislature has not amended RCW 9.68A.040 since 1989.
[5] This is clear from the following e-mail conversations that occurred on two separate days. First, on March 11, 2008, there were two separate e-mail exchanges sent within a five-minute period:

[Stribling:] . . . I will miss talking to you when you go. Since we aren't close to each other, what can you do? Can you send some pictures?
[K.C.:] I will as soon as I upload some to my computer.... but only if you send me some. Deal? NO NUDITY. Deal?
CP (Aug. 2, 2010) at Ex. 48.
[Stribling:] Well, I want the pictures to help me out with my needs.
[K.C.:] Dude, my mom would find out and I would be DEAD MEAT. The best I could do would be shorts and a tank top.
CP (Aug. 2, 2010) at Ex. 49.
Next, on March 12, 2008, there were three separate e-mail exchanges sent within a 16-minute period:
[Stribling:] So, can you send me some pictures?
[K.C.:] Not yet, geese [sic]. . . . And like I said, I am not sending you any nude pics of me ... and that's final. You can hate me for it, I don't care ... you can't make me.
CP (Aug. 2, 2010) at Ex. 55.
[Stribling:] Why won't you?
[K.C.:] I ALREADY TOLD YOU BECAUSE I COULD GET CAUGHT, I DON'T WANT TO TAKE PICS OF MYSELF LIKE THAT!!!!!!!!!!!!!!!!!!! sorry
CP (Aug. 2, 2010) at Ex. 56.
[Stribling:] You won't get caught, because the pictures will be gone before your mom [can] see them. Truth [sic] me, babe! I just want you to help me since we aren't close enough to help me in person.
[K.C.:] I.......SAID...........
NO!!!!!!!!!!!!!!!!!!!!!!!!!!!!! Why can't you respect that, I thought you would have been different about this situation. You don't realize how much you asking for pics of me like that is pissing me off, and you REALLY don't realize what I do when I'm pissed. So please just forget about the nude pics ... please!
CP (Aug. 2, 2010) at Ex. 57.
[6] The sentencing data on Stribling's judgment and sentence misidentifies the standard range sentence for several of Stribling's offenses. Counts III through VIII are correctly listed as level III seriousness offenses. Former RCW 9.94A.515 (2007). But the standard range sentence for a defendant who committed a level III offense and has a 9+ offender score is 51-68 monthsnot "51-60 [months]" as listed on Stribling's judgment and sentence. Compare RCW 9.94A.510 with CP (Dec. 18, 2009) at 8. Although counts III through VIII are all class C felonies subject to a maximum sentence of 60 months, the better practice for the State is to convey the full standard range sentence when recommending sentences and presenting draft judgment and sentences to the trial court. Importantly, where the standard range in the sentencing grid exceeds the statutory maximum sentence for the offense "the statutory maximum sentence shall be the presumptive sentence." RCW 9.94A.599. Without including the full standard range sentence, a trial court may not realize that a presumptive sentence exists in a particular case.

We also note multiple Scrivener's errors on Stribling's judgment and sentence. First, the date of crime for counts IV, V, and VIII are listed as March 8, 2008, March 9, 2008, and March 16, 2008, respectively. But, the trial court's oral rulings and written findings of fact and conclusions of law indicate that the e-mail evidence it relied on for entering guilty verdicts was March 4, 2008 for count IV; March 8, 2008 for count V; and March 11, 2008 for count VIII. RP (July 30, 2009) at 730-31; CP (Dec. 18, 2009) at 38-40. On remand, the trial court should correct these Scrivener's errors when entering a new judgment and sentence.
[7] Stribling's e-mails make clear that he wanted the victim to take the photographs for the purpose of his sexual stimulation. In an e-mail from March 11, 2008, he wrote to the victim, "I [haven't] had sex in 2 years now. We (humans) have needs that we need to meet. What would you do to meet my needs?" Ex. 43. Later that day, he asked the victim via e-mail whether she would perform specific sexual acts if they were together. After she replied "maybe," Stribling asked, "Since we aren't close to each other, what can you do? Can you send some pictures?" Ex. 45-46, 48. When the victim emphasized that she would not take nude photographs, Stribling responded, "Well, I want the pictures to help me out with my needs." Ex. 49. When the victim continued to resist his request, Stribling wrote to her, "I just want you to help me since we aren't close enough to help me [sic] in person." Ex. 57.