OSCN Found Document:BAIRD v. STATE

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 BAIRD v. STATE
2017 OK CR 16
Case Number: F-2015-939
Decided: 06/01/2017
DAVID LEE BAIRD, Appellant, v. STATE OF OKLAHOMA, Appellee.
Cite as: 2017 OK CR 16, __ __

 

 

OPINION

HUDSON, JUDGE:

¶1 Appellant David Lee Baird was tried and convicted by a jury in the District Court of Comanche County, Case No. CF-2013-493, for the crimes of Count 1: First Degree Murder, in violation of 21 O.S.Supp.2012, § 701.7(A); Count 3: Unlawful Desecration of Dead Body, in violation of 21 O.S.2011, § 1161.1; Count 4: Forging Certificate of Title, in violation of 47 O.S.2011, § 4-109; and Count 5: Obtaining Food Stamps by Fraud, in violation of 56 O.S.2011, § 243(A)(6).[1] The jury recommended Baird be sentenced to life imprisonment without the possibility of parole on Count 1; seven (7) years imprisonment and a fine of $8,000.00 on Count 3; a fine of $5,000.00 on Count 4; and three (3) months in the county jail and a fine of $500.00 on Count 5. The Honorable Gerald Neuwirth, District Judge, sentenced Appellant in accordance with the jury's verdicts and ordered that Counts 1 and 3 run consecutively to each other, and that Count 5 run concurrently with Count 1. Baird now appeals. We affirm.

BACKGROUND

¶2 In the early morning hours of September 12, 2013, the body of Claudine Marroquin was found in a shallow grave in the backyard of the home she shared with her husband, Appellant. The evidence showed Appellant murdered his wife approximately two weeks earlier after an argument on August 24, 2013.

¶3 On the night of August 24, 2013, Claudine spoke with her sister, Elizabeth Marroquin, on the telephone. Claudine was at home. She was upset with Appellant because he wanted to have sex and he was agitated with her. Elizabeth instructed Claudine to ignore him and go into a different room, which she did. Walking into the other room, Claudine discovered Appellant had pushed a big-screen television off a dresser and broken it. Elizabeth then heard Claudine and Appellant begin to argue. Claudine told Appellant she should not be with him and she should divorce him.

¶4 As the two argued, Claudine expressed to Elizabeth that Appellant got on her nerves and she was tired of it. At some point, the phone call disconnected. When Claudine called Elizabeth back approximately five to ten minutes later, Claudine told her, "Somebody is going to die tonight. We are knife to knife. Somebody is going to die tonight. It is either going to be me or him, but somebody is going to die tonight." Claudine-scared, screaming and afraid for her life-was crying as she said this. Elizabeth urged her sister to calm down.

¶5 In addition to the multiple telephone calls between them that night, Claudine also sent text messages to Elizabeth, pleading with Elizabeth to come help her. While Elizabeth was scared for Claudine, she had heard Appellant and her sister argue like this before, and she did not expect the situation to escalate. During their last phone conversation, Elizabeth suggested Claudine ask Appellant if she could go to Elizabeth's house to calm down. Elizabeth heard Claudine ask this of Appellant, and he agreed. Claudine told Elizabeth that she needed to grab some clothes before she left. This was the last time Elizabeth spoke to her sister. Claudine never made it to Elizabeth's house.

¶6 After waiting several hours for Claudine to arrive, Elizabeth went to the Claudine's house to check on her. When she arrived around 3 a.m., the lights were off and she saw the big screen television lying in the middle of the yard. Elizabeth banged on the doors and screamed, begging her sister to open the door. Getting no response, Elizabeth pushed the panic button on her car alarm, leaving it running for 30 minutes at a time. Although Claudine never came to the door, Elizabeth could hear Appellant inside, getting irritated, cursing and grunting. Elizabeth also tried to pry her way into the house, but the door was wired shut-something Elizabeth had not encountered before at her sister's house. Elizabeth eventually gave up and returned home around 8 a.m. She called the police to report her sister missing but was advised by an officer that it was too early to file such a report.

¶7 Approximately two weeks later, Elizabeth formally filed a missing person's report on Claudine. Around 5:30 p.m. on September 11, 2013, Lawton Police Officer Chester Howe went to the victim's home in an attempt to make contact with her. When he knocked, nobody came to the door. He subsequently walked around to the eastside of the house, where he encountered "a real strong smell of what [] can only [be] describe[d] as something being dead." At that point, Howe called his supervisor, Lieutenant Charlie Martin, and advised him of what he had seen and smelled.

¶8 Lieutenant Martin, along with Captain Troy Morris and Detective Ken Parsons, arrived at the scene at approximately 6 p.m. The officers eventually made contact with Appellant, who allowed them to enter the home to look for Claudine. While walking through the house, Detective Parsons noticed some blood on the door frame between the living room and the kitchen. Upon seeing the blood, Detective Parsons asked Appellant where Claudine was. Appellant said he did not know, but thought she may have gone out of town, possibly to Costa Rica. Detective Parsons also asked Appellant if he had been injured, and he said no. Thereafter, Parsons asked Appellant if they could search the house more thoroughly and obtain a DNA sample from him. Appellant said no to both requests. Everyone, including Appellant, exited the house at that point and the scene was secured while a search warrant could be obtained. Appellant went to the Ranch Motel.

¶9 Detective Parsons returned to the house with the search warrant around 10 p.m. Inside, officers found two folding knives, a loaded revolver and three swords. A briefcase containing numerous electrical cords was discovered on the top shelf of the master bedroom closet. Additionally, in a hallway linen cabinet, officers found a set of brass knuckles within the folds of the linens. A piece of yellow nylon rope along with some large trash bags were found in a guest bedroom. In the laundry room, a pair of disposable gloves was found lying on top of the trash.

¶10 The victim was ultimately found buried in a small, shallow grave in the backyard of the house. The grave was covered with a blue swimming pool liner. On top of the liner were five tires, a ladder and a blue tub. The grave was about eleven inches deep and three-and-a-half to four feet long. The victim's body was contained inside a plastic bag in the grave, similar to a large trash bag found in the guest bedroom of the house. Tool marks that appeared to be made from a shovel were found during the excavation of the grave, and a scrap of label found in the grave near the body matched the partial label on a shovel found in a backyard shed. A piece of green fabric was also found in the grave. The fabric appeared to be from a silk flower, similar to silk flowers found in the master bedroom closet.

¶11 Appellant was arrested at the Ranch Motel following the discovery of the victim's body. Among the personal items with Appellant inside the motel room was an Oklahoma Access card with Claudine's name on it.

¶12 Dr. Marc Harrison performed the autopsy on Claudine's body. She was contained in a black plastic bag tied with a white electrical cord. A similar cord was found wrapped around her ankles. Claudine's head was covered with two plastic bags, one of which was in two pieces and covered with a second loosely-tied bag. These plastic bags were similar to a trash bag found in the laundry room of Appellant's house. A can of pepper spray was found in Claudine's bra. Her body was in a moderate to early advanced state of decomposition, meaning her body was bloating with gases, and her skin was stained and beginning to slough off all over her body. Because of the skin sloughing and decomposition, Dr. Harrison was unable to see any bruises or trauma that may have been present on Claudine's external skin. Due to the plastic bags around her head and the fact her body was contained in another bag, Dr. Harrison determine the probable cause of her death to be asphyxia due to smothering.

¶13 Between the time Elizabeth last spoke to Claudine and when her body was discovered, Appellant got rid of Claudine's belongings, donating several bags of women's clothing to Goodwill and selling other items at a garage sale held by the Jung family. Appellant told the Jung's, who were his friends, that Claudine had gone to an island somewhere and was not coming back. During this time, Appellant also purchased groceries for the Jung family. The grocery receipt showed that the groceries were bought with food stamps. He additionally sold Claudine's 1999 Mazda pickup truck to Tony Warren. At the time of the sale, Appellant gave Mr. Warren the car title, which bore Claudine's purported signature. Elizabeth testified the signature on the certificate of title was not her sister's.

I. Claim of Double Jeopardy Following Mistrial.

¶14 In his first proposition of error, Appellant contends the trial of this case was barred by double jeopardy after his first trial ended in a mistrial. Appellant's claim lacks merit.

¶15 Appellant's first trial ended in a mistrial on its second day after testimony from several prosecution witnesses. Defense counsel requested the mistrial, "against [his] client's wishes," because the State had failed to file the search warrant, as well as the return listing all of the evidence collected from Appellant's house. The State opposed defense counsel's request. The State argued Appellant was aware of the search warrant's existence prior to trial-there was testimony about the search warrant at preliminary hearing-and that the defense had copies of all the photographs taken during the search as provided through discovery. While the prosecutor acknowledged the search warrant and the return were not in the State's file and thus not provided in discovery,[2] he argued the State did not intentionally suppress the evidence. Rather, the failure to provide the documents was an oversight. The prosecutor asked the trial court to resume the trial and allow the State to call two witnesses unconnected to the search warrant evidence. This, the prosecution suggested, would provide the defense time to look at both the search warrant and the return before the State called Sergeant Rick McCollister-the officer who took the photographs documenting the scene. The trial court noted this was a murder trial and expressed concern that "the defendant doesn't know whether there is any exculpatory evidence in that search warrant or not." Although the trial court found "[t]here should have been a motion to suppress a long time ago," the court ruled, "I feel like I have got to grant a mistrial. That is what I'm going to do. We will just have to do this one again on the next docket."

¶16 Prior to re-trial, Appellant filed a motion to dismiss, seeking to bar retrial on grounds of double jeopardy.[3] Therein, Appellant acknowledged that generally "a defendant who moves for a mistrial is bound by his decision and may be required to stand for retrial"; however, citing Oregon v. Kennedy, 456 U.S. 667, 671-73, 102 S. Ct. 2083, 2087-88, 72 L. Ed. 2d 416 (1982), Appellant argued retrial of his case was barred as the circumstances of the discovery violation gave him no choice but to seek a mistrial.[4] Appellant's motion thus echoed his position at the mistrial, i.e., he had no alternative but to seek a mistrial due to the State's failure to file the search warrant and the return. See Kennedy, 456 U.S. at 673 (holding where a mistrial is granted on a defendant's motion, a second trial may be barred "[o]nly where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial").

¶17 Appellant's double jeopardy claim on appeal, however, differs significantly from the claim raised below. Appellant now argues the mistrial was granted over his objection and thus retrial was barred absent a manifest necessity. See Harris v. State, 1989 OK CR 34, ¶ 21, 777 P.2d 1359, 1365 ("Following a mistrial granted without the request or consent of the defendant, retrial is barred absent a manifest necessity."). Appellant has therefore waived all but plain error review of this claim. See Harmon v. State, 2011 OK CR 6, ¶ 36, 248 P.3d 918, 934 (when a specific objection is made at trial, this Court will not entertain a different objection on appeal); see also Barnard v. State, 2012 OK CR 15, ¶ 25, 290 P.3d 759, 767 (double jeopardy violation claims may be waived where they were not raised in the trial court). Because the alleged error is of constitutional dimension, we review Appellant's claim to determine whether any error was harmless beyond a reasonable doubt. Rousch v. State, 2017 OK CR 7, ¶ 3, ___P.3d___.

¶18 Since statehood, this Court has looked to five essential factors to determine whether a discharge of the trial jury operates as an acquittal:

First. The defendant must be put upon trial before a court of competent jurisdiction. Second. The information or indictment against the defendant must be sufficient to sustain a conviction. Third. The jury must have been impaneled and sworn to try the case. Fourth. After having been so impaneled and sworn to try the case the jury must have been unnecessarily discharged. Fifth. That such discharge of the jury must have been without the consent of the defendant. When those things all occur, then the discharge of a jury operates as an acquittal of the defendant.

Randolph v. State, 2010 OK CR 2, ¶ 8, 231 P.3d 672, 675 (quoting Loyd v. State, 1911 OK CR 255, 6 Okla.Crim. 76, 116 P. 959). "Whether the defendant consented to the grant of the mistrial is the critical first issue-and often the deciding issue-in determining whether or not he/she can be retried." State v. Mosley, 2011 OK CR 20, ¶ 10, 257 P.3d 409, 412. Where the mistrial is granted over the defendant's objection, retrial is barred absent a showing of manifest necessity. Id., 2011 OK CR 20, ¶¶ 11-12, 257 P.3d at 412-13. Yet, a mistrial that is granted at the request of the defendant is an entirely different situation. As the defendant himself elected to terminate the proceedings against him, the "manifest necessity" standard is not applicable and retrial is generally not prohibited. Id., 2011 OK CR 20, ¶ 13, 257 P.3d at 413. The narrow exception to this general rule is limited to cases in which the prosecutor's conduct giving rise to the motion for mistrial was done intentionally "to goad" the defendant into requesting a mistrial. Id. 

¶19 In the present case, Appellant's argument on appeal presumes that because his counsel's request for a mistrial was made against Appellant's wishes, the mistrial was in effect granted over his objection, and thus retrial was barred absent manifest necessity. While Appellant presents a unique issue-one in which we have found no cases directly on point in Oklahoma-we find Appellant's presupposition to be fatally flawed.

¶20 In People v. Hambrick, 947 N.Y.S.2d 139, 141 (N.Y.App.Div.2012), the defendant disagreed with his counsel's request for mistrial. On appeal, the defendant-focusing on his personal disagreement with the request-argued that notwithstanding his own counsel's request for a mistrial, retrial was barred absent a showing of manifest necessity. The New York court disagreed, finding the defendant was bound by his counsel's strategic decision:

Having accepted the assistance of counsel, a defendant retains authority over certain fundamental decisions. Those decisions that have traditionally been considered to be fundamental include whether to accept a plea of guilty, waive a jury trial, testify in one's own behalf, or take an appeal. Strategic and tactical decisions entrusted to counsel include which jurors to accept or strike, which witnesses should be called on the defendant's behalf, what evidence should be introduced, whether to object to the admission of evidence, whether and how a witness should be cross-examined, and whether to consent to a mistrial. Thus, the defendant's personal consent to a mistrial was not necessary, and his counsel's decision to move for a mistrial was binding on the defendant.

Id. (emphasis added and citations and internal quotation marks omitted).

¶21 We find this reasoning persuasive and adopt the Hambrick court's rationale. See also United States v. Burke, 257 F.3d 1321, 1324 (11th Cir.2011) (holding that the decision whether to seek a mistrial "is a tactical decision entrusted to defense counsel, binding the defendant even when the defendant expressed a contrary wish to his lawyer"); United States v. Chapman, 593 F.3d 365, 367 (4th Cir. 2010) ("decisions involving mistrials-whether to ask for a mistrial and whether to accept an offer of a mistrial-are tactical decisions that must be made by the attorney, not the defendant"); United States v. Washington, 198 F.3d 721, 724 (8th Cir. 1999) (decision to request a mistrial "involves numerous alternative strategies such as remaining silent, interposing an objection, requesting a curative instruction, or requesting an end to the proceeding" thus common sense dictates it is a strategic decision ultimately left to counsel); Johnson v. State, 283 Ga.App. 524, 529, 642 S.E.2d 170, 176 (2007) ("the ultimate decision over whether to move for a mistrial is a strategic one made by the lawyer, not the client"). Thus, in the present case, defense counsel's strategic decision to move for a mistrial is binding on Appellant. Appellant's retrial was therefore not barred unless, pursuant to the narrow exception discussed above, the prosecutor's conduct was calculated to goad Appellant into requesting a mistrial.

¶22 The circumstances of Appellant's case do not present this narrow exception. Nothing in the record supports a finding that the State, in failing to file the search warrant and return, was intentionally seeking to cause a mistrial or was goading Appellant into seeking a mistrial. See Mosley, 2011 OK CR 20, ¶ 14, 257 P.3d at 414 (distinguishing between prosecutorial misconduct that could jeopardize a defendant's right to a fair trial and misconduct intended to provoke a mistrial). Moreover, the record does not support a conclusion that the State's conduct was based upon a perception that it was about to lose and hence was intentionally seeking to abort this first trial. Id. To the contrary, the prosecutor argued zealously against a mistrial. No double jeopardy violation thus occurred.

¶23 As there was no error, there is no plain error. Appellant's Proposition I is denied.

II. Assessment of Court Costs and Fees Related to Mistrial.

¶24 Appellant asserts in his second proposition of error that any court costs and fees assessed in his case which are associated with the mistrial should be disallowed. As reflected in the Judgment and Sentence, Appellant was ordered to pay a total of $17,465.00 in fines and costs in this case. This sum includes a total of $13,500.00 in imposed fines-$8,000.00, $5,000.00 and $500 on Counts 3, 4 and 5, respectively. Thus, as only $13,500.00 of the total costs assessed can be attributed to his fines, Appellant contends the court costs and fees assessed in his case must be reversed and remanded for further review to disallow costs associated with the mistrial.

¶25 As Appellant failed to object to the assessment of court costs at sentencing, we review only for plain error. See Hubbard v. State, 2002 OK CR 8, ¶ 7, 45 P.3d 96, 99 (defendant's failure to object to assessment of incarceration costs at sentencing waived all but plain error review). Under the plain error test, an appellant must show an actual error, that is plain or obvious, affecting his substantial rights. Jackson v. State, 2016 OK CR 5, ¶ 4, 371 P.3d 1120, 1121. This Court will only correct plain error if the error seriously affects the fairness, integrity or public reputation of the judicial proceedings or otherwise represents a miscarriage of justice. Id.; Stewart v. State, 2016 OK CR 9, ¶ 12, 372 P.3d 508, 511.

¶26 Upon review, we find no error, plain or otherwise, occurred. Notably, Appellant assumes the trial court assessed costs stemming from the mistrial; however, he fails to demonstrate this actually occurred. Moreover, even assuming arguendo that such costs were assessed, such an assessment was proper. Section 101 of Title 28 provides that "all costs in the prosecution of all criminal actions shall, in case of conviction of the defendant, be adjudged a part of the penalty of the offense of which the defendant may be convicted . . . ." 28 O.S.2011, § 101 (emphasis added). "The mistrial was a part of the trial of this case, albeit an aborted part." Hernandez v. State, F-1995-54, slip op. at 2 (Okl. Cr. Jan. 22, 1996) (not for publication). The controlling factor is whether Appellant was ultimately found guilty in the same case. Id. Having been so convicted, Appellant is liable for the costs of his prosecution.[5] Appellant's Proposition II is denied.

III. Self Defense.

¶27 In his third proposition of error, Appellant raises multiple issues relating to a claim of self-defense. Appellant specifically argues (1) the trial court abused its discretion when it denied Appellant's request to instruct the jury on self-defense; (2) the State failed to disprove his self-defense claim; and (3) the State failed to prove the essential element of malice aforethought beyond a reasonable doubt. Appellant has waived review of these claims.

¶28 Combining multiple issues in a single proposition of error violates Rule 3.5(A)(5), Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2016) ("Each proposition of error shall be set out separately in the brief. . . . Failure to list an issue pursuant to these requirements constitutes waiver of alleged error."); Collins v. State, 2009 OK CR 32, ¶ 32, 223 P.3d 1014, 1023 ("Under our recently revised Rule 3.5(A)(5), combining multiple issues in a single proposition is clearly improper and constitutes waiver of the alleged errors."). While Appellant's Proposition III allegations are somewhat related, Appellant's primary claim-contending self-defense instructions were mandated-is clearly a separate and distinct issue from his sufficiency of the evidence claims.[6] Thus, Appellant has waived review of his Proposition III claims.

¶29 Nonetheless, a merits review of Appellant's allegations discloses no error occurred. The evidence was insufficient to support Appellant's claim of self-defense. Davis v. State, 2011 OK CR 29, ¶ 99, 268 P.3d 86, 114 (when the evidence is insufficient to support a claim of self-defense, the trial court is not bound to instruct on that defense); West v. State, 1990 OK CR 61, ¶ 7, 798 P.2d 1083, 1085 ("[s]elf-defense is not available to a person who is the aggressor or who enters into mutual combat."). As the evidence did not warrant the giving of self-defense instructions, the State was not required to prove beyond a reasonable doubt that Appellant was not acting in self-defense. Cf. McHam v. State, 2005 OK CR 28, ¶ 10, 126 P.3d 662, 667 (where the evidence is sufficient to submit the issue of self-defense to the jury, the State is "obligated to prove, beyond a reasonable doubt, that Appellant did not act in self-defense"). Moreover, taking the evidence in the light most favorable to the State, any rational trier of fact could find beyond a reasonable doubt that Appellant killed the victim with malice aforethought. Davis, 2011 OK CR 29, ¶ 74, 268 P.3d at 111 (restating sufficiency of the evidence standard); Bland v. State, 2000 OK CR 11, ¶ 26, 4 P.3d 702, 713 (malice aforethought may be proved by circumstantial evidence). Appellant's Proposition III is denied.

IV. & V. Sufficiency of the Evidence.

¶30 In his fourth and fifth propositions of error, Appellant challenges the sufficiency of the State's evidence to support his convictions for forging a certificate of title (Count 4) and obtaining food stamps by fraud (Count 5).

¶31 "We review sufficiency of the evidence claims in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Davis, 2011 OK CR 29, ¶ 74, 268 P.3d at 111. This analysis requires examination of the entire record. Young v. State, 2000 OK CR 17, ¶ 35, 12 P.3d 20, 35. "This Court will accept all reasonable inferences and credibility choices that tend to support the verdict." Davis, 2011 OK CR 29, ¶ 74, 268 P.3d at 111. Further, the law makes no distinction between direct and circumstantial evidence and either, or any combination of the two, may be sufficient to support a conviction. Miller v. State, 2013 OK CR 11, ¶ 84, 313 P.3d 934, 965.

¶32 With regard to Appellant's conviction for forging a certificate of title, Appellant specifically contends the State failed to prove he forged his wife's name on the car title. This argument lacks merit. Section 4-109 of Title 47 provides "[a]ny person who shall alter or forge, or cause to be altered or forged, any certificate of title . . . or who shall hold or use any such certificate or assignment, knowing the same to have been altered or forged, shall be deemed guilty of a felony." 47 O.S.2011, § 4-109 (emphasis added).

¶33 The evidence in this case-viewed in the light most favorable to the State-showed the purported signature of the victim's was not her signature. The evidence further proved Appellant presented the certificate of title to Warren, knowing it was forged. Appellant without question knew the victim was dead at the time he presented the certificate of title to Warren.[7] The fact he told Warren his wife was out of town demonstrated Appellant's knowledge of the forgery as well as his intent to defraud. Thus, Appellant's Proposition IV is denied.

¶34 As to Appellant's conviction for obtaining food stamps by fraud, Appellant specifically contends (1) the evidence was insufficient to prove he purchased any groceries using the victim's food stamp card; and (2) he was eligible as a member of the victim's family to use the victim's food stamp card.

¶35 Section 243(A)(6) of Title 56 provides that no person shall:

Acquire, possess, use or transfer food stamps or coupons, or any benefit or debit card or any other device authorizing participation in the food stamp program that has been issued to another person, except as authorized by this act and the rules of the Department of Human Services.

56 O.S.2011, § 243(A)(6) (emphasis added). In the present case, the evidence showed that in September 2013, Appellant bought groceries for the Yung family that were purchased with food stamps. Additionally, when Appellant was arrested in his motel room shortly after the victim's body was discovered, the victim's Oklahoma Access food stamp card was found among Appellant's personal belongings. This evidence, viewed in the light most favorable to the State, was sufficient to prove Appellant fraudulently possessed and used the victim's food stamp card.

¶36 Moreover, as to Appellant's contention that he was authorized to use the victim's food stamp card, the State was only required to prove Appellant acquired, possessed or used a food stamp card that was "issued to another person." Whether Appellant was eligible to use the victim's card was a matter of defense-one that he did not assert at trial. See Young v. City of Tulsa, 1977 OK CR 153, ¶ 19, 563 P.2d 156, 160-61 (proof of an exception is a matter of defense). Appellant's Proposition V is thus denied.

VI. Challenged Evidence.

¶37 In his sixth proposition of error, Appellant argues the trial court erred in admitting evidence relating to numerous weapons found in his home when the search warrant was executed. The challenged evidenced is comprised of five (5) crime scene photographs-State's Exhibits 60, 61, 63, 64 and 72. The photographs depict a gun, a total of three swords and a set of brass knuckles. Appellant asserts this evidence amounted to unrelated other bad acts or other crimes and was more prejudicial than probative.

Evidence of other crimes or bad acts is generally inadmissible, but may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." 12 O.S.2001, § 2404(B). Other crimes evidence may also be admissible where it is part of the res gestae of the crime charged. Pickens v. State, 2001 OK CR 3, ¶ 20, 19 P.3d 866, 876; Neill v. State, 1994 OK CR 69, ¶¶ 35-36, 896 P.2d 537, 550-51. The res gestae exception differs from the other listed exceptions to the evidence rule; in the other exceptions, the other offense is intentionally proven, while in the res gestae exception, the other offense incidentally emerges. Neill, id. The final decision on the admissibility of evidence is left to the sound discretion of the trial court, and absent a clear showing of abuse and resulting prejudice, this Court will not disturb the trial court's ruling. Pickens, 2001 OK CR 3, ¶ 21, 19 P.3d at 876.

Jones v. State, 2006 OK CR 5, ¶ 48, 128 P.3d 521, 540.

¶38 In the present case, Appellant incorrectly categorizes the challenged weapons evidence as evidence of other crimes. See Howell v. State, 1994 OK CR 62, ¶ 21, 882 P.2d 1086, 1091 ("Evidence of other crimes which is apparent only to defense counsel will not constitute reversible error."). Rather, the weapons evidence was res gestae evidence as the evidence incidentally emerged as the events of this case developed. McElmurry v. State, 2002 OK CR 40, ¶ 63, 60 P.3d 4, 21-22 ("Res gestae are those things, events, and circumstances incidental to and surrounding a larger event that help explain it."); see also Raymond v. State, 1986 OK CR 51, ¶ 6, 717 P.2d 1147, 1150 (noting that the rule prohibiting the admission of other crimes evidence does not apply to res gestae evidence). The weapons were found during the search of Appellant's house as law enforcement searched for the victim and evidence related to her disappearance. The evidence was relevant to the possible cause of the victim's death. Determining the actual cause of the victim's death in this case was impeded by the victim's state of decomposition. The two plastic bags found over the victim's head when her body was recovered ultimately led the medical examiner to determine the probable cause of death to be "asphyxia due to smothering." However, due to the victim's decomposed state, the medical examiner could not determine if there were any bruises, abrasions or trauma to her external skin, or any bruises or bleeding underneath the scalp. The challenged weapons evidence was therefore relevant to show a possible cause of death. Furthermore, the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice. The trial court's admission of this evidence thus was not an abuse of discretion. Neloms v. State, 2012 OK CR 7, ¶ 35, 274 P.3d 161, 170. Appellant's Proposition VI is denied.

VII. Excessive Sentence.

¶39 In his seventh proposition of error, Appellant contends his sentences are excessive. Despite this broad assertion, Appellant's argument focuses almost exclusively on his Count 1 sentence of life without parole. Appellant does not dispute that his life without parole sentence is within the statutory range of punishment for First Degree Murder. 21 O.S.Supp.2012, § 701.7(A). Rather, Appellant argues that due to the cumulative effect of the errors alleged in his Propositions I, III, IV and V, his sentences should be modified in the interest of justice. Livingston v. State, 1990 OK CR 40, ¶ 16, 795 P.2d 1055, 1059 (need to cure trial error may necessitate sentence modification in the interest of justice).

¶40 This Court will not modify a sentence within the statutory range unless, considering all the facts and circumstances, it shocks the conscience. Pullen v. State, 2016 OK 18, ¶ 16, 387 P.3d 922, 928; Neloms, 2012 OK CR 7, ¶ 39, 274 P.3d at 171. This Court thoroughly addressed and rejected Appellant's Propositions I, III, IV and V claims. This is not a case where trial error influenced any of the jury's sentence recommendations. Moreover, the life without parole sentence recommended by the jury, and imposed by the district court, was factually substantiated and justified under the facts presented in this case.

¶41 Appellant's sentences do not shock the conscience and are not excessive. Thus, relief for Appellant's Proposition VII is denied.

VIII. Cumulative Error.

¶42 In his eighth and final proposition of error, Appellant alleges that the accumulation of error deprived him of a fair trial. "A cumulative error argument has no merit when this Court fails to sustain any of the other errors raised by Appellant. Even when there have been prejudicial irregularities during the course of a trial, relief is warranted only if the cumulative effect of all the errors denied Appellant a fair trial." Pavatt v. State, 2007 OK CR 19, ¶ 85, 159 P.3d 272, 296 (internal citations omitted). This is not a case where, considered together, various instances of error affected the outcome of the proceedings and denied Appellant a fair trial. See Postelle v. State, 2011 OK CR 30, ¶ 94, 267 P.3d 114, 146 ("Cumulative error . . . does not deprive the defendant of a fair trial when the errors considered together do not affect the outcome of the proceedings."). Thus, relief for cumulative error is unwarranted and Appellant's Proposition VIII is denied.

DECISION

¶43 The Judgment and Sentence of the district court is AFFIRMED. Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2017), the MANDATE is ORDERED issued upon delivery and filing of this decision.

AN APPEAL FROM THE DISTRICT COURT OF COMANCHE COUNTY
THE HONORABLE GERALD NEUWIRTH, DISTRICT JUDGE

 

 
 
 APPEARANCES AT TRIAL
 APPEARANCES ON APPEAL
 
 
  
  
 
 
 RONALD L. WILLIAMS
 KATRINA CONRAD-LEGLER
 
 
 OKLAHOMA INDIGENT DEFENSE
 APPELLATE DEFENSE COUNSEL
 
 
 P.O. BOX 2095
 P.O. BOX 926
 
 
 LAWTON, OK 73502
 NORMAN, OK 73070
 
 
 COUNSEL FOR DEFENDANT
 COUNSEL FOR APPELLANT
 
 
  
  
 
 
 KYLE CABELKA
 E. SCOTT PRUITT
 
 
 ASSISTANT DISTRICT ATTORNEY
 OKLAHOMA ATTORNEY GENERAL
 
 
 315 S.W. 5TH STREET, ROOM 502
 JOSHUA L. LOCKETT
 
 
 LAWTON, OK 73501
 KEELEY L. MILLER
 
 
 COUNSEL FOR THE STATE
 ASSISTANT ATTORNEYS GENERAL
 
 
  
 313 N.E. 21ST STREET
 
 
  
 OKLAHOMA CITY, OK 73105
 
 
  
 COUNSEL FOR APPELLEE
 
 

 

OPINION BY: HUDSON, J.
LUMPKIN, P.J.: CONCUR IN RESULT 
LEWIS, V.P.J.: CONCUR 
JOHNSON, J.: CONCUR 
SMITH, J.: CONCUR 

FOOTNOTES

[1] Appellant was additionally charged with Count 2: Unlawful Removal of Dead Body, in violation of 21 O.S.2011, § 583. However, the trial court sustained defense counsel's demurrer to the charge at the conclusion of the State's case-in-chief.

[2] Pursuant to the State's open file policy, defense counsel had been given access to the State's case file the week before trial to ensure defense counsel had everything.

[3] Appellant's motion further sought, in the alternative, to suppress the evidence relating to the search warrants.

[4] The record does not show that the trial court made a formal ruling on Appellant's motion.

[5] Appellant does not contend any costs associated with the dismissed Count 2 charge of Unlawful Removal of Dead Body were improperly assessed.

[6] Appellant additionally mentions in passing that the trial court further erred when it denied Appellant's request to instruct the jury pursuant to OUJI-CR (2d) 9-11 (Evidence of Deceased's Character). Not only does this assertion add yet another issue to Appellant's Proposition III, but Appellant fails to support this allegation with any citation to authority. Thus, this issue is also waived. See Rule 3.5(A)(5), Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2016) ("Merely mentioning a possible issue in an argument or citation to authority does not constitute the raising of a proposition of error on appeal.").

[7] Appellant references Warren's testimony at the preliminary hearing, wherein some confusion arose over the date in which title to the victim's vehicle was actually transferred. However, on a sufficiency of the evidence claim, this Court considers the evidence before the jury, which provided the sale took place on September 6, 2013, several days after the victim went missing and prior to the discovery of her body. Appellant did not challenge the validity of this date at trial.






 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Criminal Appeals Cases
 Cite
Name
Level

 1989 OK CR 34, 777 P.2d 1359, HARRIS v. STATE
Discussed
 1977 OK CR 153, 563 P.2d 156, YOUNG v. CITY OF TULSA
Discussed
 1990 OK CR 40, 795 P.2d 1055, LIVINGSTON v. STATE
Discussed
 1990 OK CR 61, 798 P.2d 1083, WEST v. STATE
Discussed
 1994 OK CR 62, 882 P.2d 1086, HOWELL v. STATE
Discussed
 1994 OK CR 69, 896 P.2d 537, NEILL v. STATE
Discussed
 1911 OK CR 255, 116 P. 959, 6 Okl.Cr. 76, Loyd v State
Discussed
 2001 OK CR 3, 19 P.3d 866, 72 OBJ 388, PICKENS v. STATE
Discussed at Length
 2002 OK CR 8, 45 P.3d 96, HUBBARD v. STATE
Discussed
 2002 OK CR 40, 60 P.3d 4, McELMURRY v. STATE
Discussed
 2005 OK CR 28, 126 P.3d 662, McHAM v. STATE
Discussed
 2006 OK CR 5, 128 P.3d 521, JONES v. STATE
Discussed
 2007 OK CR 19, 159 P.3d 272, PAVATT v. STATE
Discussed
 2009 OK CR 32, 223 P.3d 1014, COLLINS v. STATE
Discussed
 2010 OK CR 2, 231 P.3d 672, RANDOLPH v. STATE
Discussed
 2011 OK CR 6, 248 P.3d 918, HARMON v. STATE
Discussed
 2011 OK CR 20, 257 P.3d 409, STATE v. MOSLEY
Discussed at Length
 2011 OK CR 29, 268 P.3d 86, DAVIS v. STATE
Discussed at Length
 2011 OK CR 30, 267 P.3d 114, POSTELLE v. STATE
Discussed
 2012 OK CR 7, 274 P.3d 161, NELOMS v. STATE
Discussed at Length
 2012 OK CR 15, 290 P.3d 759, BARNARD v. STATE
Discussed
 2013 OK CR 11, 313 P.3d 934, MILLER v. STATE
Discussed
 2016 OK CR 5, 371 P.3d 1120, JACKSON v. STATE
Discussed
 2016 OK CR 9, 372 P.3d 508, STEWART v. STATE
Discussed
 2016 OK CR 18, 387 P.3d 922, PULLEN v. STATE
Cited
 2017 OK CR 7, ROUSCH v. STATE
Cited
 2000 OK CR 11, 4 P.3d 702, 71 OBJ 1304, Bland v. State
Discussed
 2000 OK CR 17, 12 P.3d 20, 71 OBJ 2286, Young v. State
Discussed
 1986 OK CR 51, 717 P.2d 1147, RAYMOND v. STATE
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 2016 OK 18, 369 P.3d 374, HEATH v. GUARDIAN INTERLOCK NETWORK, INC.
Cited
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 2404, Character Evidence Not Admissible to Prove Conduct - Exceptions - Other Crimes
Cited
Title 21. Crimes and Punishments
 Cite
Name
Level

 21 O.S. 1161.1, Desecration of a Human Corpse - Penalty
Cited
 21 O.S. 583, Disclosing Proceedings of Grand Jury
Cited
 21 O.S. 701.7, Murder in the First Degree
Discussed
Title 28. Fees
 Cite
Name
Level

 28 O.S. 101, Fees and Costs in Criminal Cases Part of Penalty - Enforcement by Imprisonment - Persons Unable to Pay
Cited
Title 47. Motor Vehicles
 Cite
Name
Level

 47 O.S. 4-109, Altering or Forging Certificate of Title - Punishment
Discussed
Title 56. Poor Persons
 Cite
Name
Level

 56 O.S. 243, Food Stamp Fraud - Penalties
Discussed